STEPHEN HUSSEY v. W. L. KIRKMAN, Adm'r of JOHN WOODS.

*Evidence—Transaction with Deceased Person—Statute of Limitations.*

1. While a plaintiff in an action may be competent to testify to the *handwriting* of a deceased person to a paper writing—the subject of the action—it is clear that he is incompetent to testify to the *contents* of that writing.

2. When the Statute of Limitations is pleaded, it devolves upon the plaintiff to show that his cause of action accrued within the time limited by law for beginning it.

3. A new promise, to repel the bar of the Statute of Limitations must be clear, positive and distinctly refer to the debt sued upon. It must be made to the party, his agent, or attorney. A promise to a third party will not be recognized. Upon causes of action accruing since the adoption of the Code of Civil Procedure, the new promise must be in writing.

(*Peebles* v. *Maxwell*, 64 N. C., 313 ; *Rush* v. *Steed*, 91 N. C., 226 ; *Faison* v. *Bowden*, 72 N. C., 405 ; *Parker* v. *Shuford*, 76 N. C., 219, and *Kirby* v. *Mills*, 78 N. C., 124, cited and approved).

CIVIL ACTION, tried before *Gilmer*, *Judge*, at December Term, 1885, of the Superior Court of GUILFORD.

The plaintiff's action, begun on April 8th, 1884, before a Justice of the Peace, was, as described in the summons, upon a debt of $54.50, with interest from June, 1875, and his complaint upon the trial was upon a promissory note, alleged to have been lost, of like sum and interest, subject to a credit of ninety cents.

The defendant denied the plaintiff's allegations and set up also a defence arising under the Statute of Limitation. Judgment was rendered against the defendant, and he appealed to the Superior Court.

Upon the trial in the Superior Court, the plaintiff introduced one Cullen Woods, who testified : I was well acquainted with John Woods and was at his store-house frequently about two months before his death, and about two weeks before he was taken down sick ; and at this time had a conversation with him, in which he said he was going out West soon, if his health would permit, and that he owed a few debts, among which was a note held by the plaintiff, Stephen Hussey, for near the sum of sixty dollars; that it was just and due, and he intended to pay it if he ever got well enough. Woods was then complaining very much, and died in March, 1883. Witness remembered to have seen a note held by plaintiff dated 1844.

In this conversation, Woods said this note of near sixty dollars had been renewed. This conversation was had about two or three weeks before he was taken down sick, and about two months before he died.

Witness did not remember that he ever told plaintiff about this.

The plaintiff was next introduced, and testified : That he had lost the note which was spoken of by Cullen Woods; that he had made diligent search for the note and could not find it ; that

he was well acquainted with the handwriting of John Woods, and that the signature was in his handwriting. Witness was then asked, what other part of the note was in John Woods's handwriting, and replied that the seal, and date, also was in said Woods's handwriting. Witness also said body of note was in his (witness) handwriting.

It being proven that witness had lost the note, and that the signature was in the handwriting of John Woods, the plaintiff proposed to prove what was the contents, &c., of the note, as setting up a lost instrument. Defendant objected, and the objection was sustained, and plaintiff excepted.

Cullen Woods was recalled, and testified, that in the conversation above referred to, John Woods told him that the note of near sixty dollars, held by the plaintiff against him, was a note that had been shortly before that renewed by him to the plaintiff.

Upon the foregoing facts, his Honor, Judge Gilmer, held, that there was no evidence to go to the jury, and to this ruling by the Court, the plaintiff excepted, and submitted to a nonsuit, and appealed.

*Mr. John A. Barringer,* for the plaintiff.
No counsel for the defendant.

SMITH, C. J., (after stating the facts). It will be perceived, that while the plaintiff was allowed to testify to the handwriting of the defendant's intestate in the signature and seal in the note, under the ruling in *Peebles* v. *Maxwell,* 64 N. C., 313, and in *Rush* v. *Steed,* 91 N. C., 226, yet he was not permitted to speak of the contents of the instrument, by reason of the interdict of The Code, §590, because it was written by the intestate.

The giving of the note in its entirety was, undoubtedly, a transaction between the plaintiff and intestate, as much the signing and sealing as any other part of it, and of this, the witness had the same personal knowledge. Indeed, it was a consummation from which the vitality of the contract is derived. Had

it been present, this proof would have entitled the plaintiff to have it read to the jury, and, if not controverted, to a verdict upon it.

If the ruling in *Peebles* v. *Maxwell* is to be followed, and it was followed with evident reluctance, as a precedent for the similar ruling in the other case, involving, in the opinion of the Court, "a very fine spun distinction," it would seem not very unreasonable to permit to be shown the contents of the instruments, upon the same kind of testimony as is allowed to prove the execution. This might rest upon the memory of the witness, from reading the note with the recognized signature, and apart from his personal knowledge of the making, just as he testified to handwriting, from his general knowledge, irrespective of his seeing the signing.

But if any error was committed in excluding proof of the provisions of the note, after proof of execution, it would lie rather in the admission of the testimony, to show execution, than in the exclusion of testimony of the terms of the executed instrument. The latter ruling is clearly not erroneous, and the other, in the plaintiff's favor, supplies him with no just grounds of complaint.

Upon the received evidence, it does not appear when the note was made, nor when it matured; and when the statutory bar is set up, it devolves on the plaintiff, to show that the cause of action accrued within the time limited for bringing it.

If the note was made previous to the time when the Code of Civil Procedure went into effect, there would be no limited time for instituting suit, but only a presumption of payment raised by the lapse of time. If made and maturing on or after April 8th, 1874, the limitation in the present law would not have expired before the issue of the summons. *The Code*, §132, par. 2.

If it was executed and became due within the interval thus marked, the statutory bar would protect the intestate. The plaintiff did not show when the note was given, and when the cause of action accrued.

To meet this difficulty, we suppose the intestate's admissions of his indebtedness, were given in evidence, and the inquiry is, were they sufficient to remove the bar.

The admission is, that the intestate owed a note to the plaintiff of about sixty dollars, which had been renewed.

The trouble is, that no note has been produced, nor its contents shown, to which the admissions can be attached, so as to admit of identification.

The acknowledgment is very like that in *Faison* v. *Bowden*, 72 N. C., 405, in which the testator said *to the plaintiff*, "I can't pay you what I owe you, but I will pay you soon, or next winter. I need what money I have now for building, and it will do you more good to get it in a lump." The testator owed the plaintiff for medical services, running over a period from the beginning of 1854 to his death, in November, 1861, and the recognition of the debt was relied on to remove the bar as to the whole account.

It was held to be insufficient, and READE, J., for the Court, says: "The rule to be gathered from the numerous cases, to which we were referred by the counsel, may be thus expressed: The new promise must be definite and show the nature and amount of the debt, or must distinctly refer to some writing, or to some other means by which the amount and nature of it can be ascertained; or there must be an acknowledgment of a present subsisting debt, equally definite and certain, from which a promise to pay such debt may be implied."

Again, it has been held, that the promise must be made to the creditor himself, (*Parker* v. *Shuford*, 76 N. C., 219, and *Faison* v. *Bowden*, Ib., 425), or to an attorney or agent for the creditor, (*Kirby* v. *Mills*, 78 N. C., 124), to repel the statute.

If, however, the note was executed since the Code of Civil Procedure became the law, (and the time is not shown), the promise or acknowledgment must be in writing (The Code, §172), and if before, there is no statutory limitation applicable.

The ruling of the Court, that there was no evidence before the jury to warrant a verdict for the plaintiff, must therefore be sustained.

No error.                                                    Affirmed.