JENNY L. SATTERTHWAITE v. E. H. DAVIS, EXR. OF SAMUEL T. SATTERTHWAITE, DECEASED; FRANK A. DRURY, TRUSTEE, ET AL.

(Filed 5 December, 1923.)

**1. Appeal and Error—Supreme Court—Laches—Objections and Exceptions.**

The question of appellant's laches in prosecuting his action may not be raised for the first time in the Supreme Court when not falling within the exception as to matters not jurisdictional, or those in the nature of a demurrer to the sufficiency of the complaint to allege a cause of action.

**2. Limitation of Actions—Pleadings—Defenses.**

The statute of limitations must be pleaded in the answer to be available as a defense to the cause of action.

**3. Evidence—Nonsuit—Waiver—Appeal and Error.**

    The defendant waives his right to insist on his motion as of nonsuit after the close of plaintiff's evidence, by the introduction of his evidence in defense.

**4. Evidence—Deceased Persons.**

    Where an attorney for a deceased person has testified in behalf of the estate of transactions between his client and himself, it is competent for the plaintiff, having testified that she had shown the attorney all telegrams she had received from the deceased, to introduce in evidence a telegram materially bearing upon the fact at issue, and contradictory of the evidence of the attorney, when properly confined to that purpose.

**5. Same—Appeal and Error—Instructions—Presumptions—Record.**

    Where the testimony excepted to is competent for a certain purpose, it will be presumed that the instructions of the trial judge properly confined it thereto, when the charge is not sent up in the record on appeal.

**6. Evidence — Deceased Persons — Statutes — Transactions — Letters—Handwriting.**

    Where the widow of her deceased husband seeks in her suit to set aside an agreement of separation given upon consideration, and to dissent from his will, and it is controverted as a material matter whether they were reconciled before his death and lived together in the marital relations, letters received from her husband by others bearing thereon may be identified by the plaintiff as in the handwriting of the deceased, and introduced in evidence. C. S., sec. 1795.

APPEAL by defendants from *Calvert, J.,* at July Special Term, 1923, of HENDERSON.

The purpose of this action is to rescind and cancel a separation agreement between plaintiff and her deceased husband and the defendant trustee, the heirs at law of the husband being also made parties. The complaint avers that the plaintiff was induced to execute said agreement by fraud and coercion, of which her husband's attorney, one Sibley, was the chief instrument. She avers that on 12 September, 1912, about two and a half months before said agreement was executed, while living with her husband in Boylston, Mass., she was wrongfully and unlawfully deserted by him and was left wholly without means of subsistence, and thus compelled to take refuge in the home of her mother and sister in Worcester, Mass., and forced to depend upon their bounty for her support; that her husband left the country and took up his abode in Winnipeg, Manitoba, where he had considerable property interests. She further avers that in this dilemma of her helplessness she consulted an attorney, W. H. Bent, but he failing to be of service, she went to her husband's lawyer, at his invitation, and laid all the facts before him and impressed upon him that what she wanted was that her husband should come back to her. She was advised by said attorney to accept a money settlement, and this advice was reiterated upon every

occasion that she saw him, and it was represented to her by said attorney that her husband would refuse to return to the United States or make any provision for her support unless she acceded to this demand. Said attorney represented to her that there was no possibility of reconciliation except by her signing such agreement as her husband proposed, and he furthermore gave her to understand that in the event of such reconciliation the agreement would not deprive her of her marital rights in the property of her husband.

It is further alleged in the complaint that, upon this being urged by said Sibley, she telegraphed her husband at Winnipeg: "I am not able to come to Winnipeg. As soon as you are able to come home I will consider a reconciliation, but only before agreement is signed and have talked with you. Reconciliation now must mean for all time. Consider it well." To this the husband replied, which is set out in the complaint: "Positively refuse to return until agreement is signed. Quit telegraphing. Write."

Pressed by her necessities and the insistence of her husband and his attorney, she yielded and advised said attorney that she would sign the agreement, fully believing at the time that her husband was in Winnipeg and that she must sign said agreement in order to procure his return. It was not until after her signature had been affixed to the paper that Sibley made disclosure of the fact that her husband was concealed in his back office. The acknowledgment or probate of said instrument was taken by said Sibley in his capacity as a justice of the peace.

The plaintiff further avers that she did not in her judgment accept or approve said instrument; that she did not sign the same freely or voluntarily, and that on the contrary she signed it under coercion and duress and upon the representation of said attorney that it was only by signing said agreement that her husband could be induced to resume marital relations and give her the support and maintenance which would relieve her of being dependent for support upon her mother and sister, and that she was further influenced and induced to sign said agreement by the expectation held out to her by her husband's said attorney that said agreement would not be binding if the plaintiff and her husband should live together again as man and wife. The money consideration recited in said agreement is admitted to have been paid, and it was proved (though denied in the answer), and is sustained by the verdict, that the parties were promptly reconciled and thereafter lived together as husband and wife.

The complaint further avers that during all the years that plaintiff and her husband lived together thereafter there was never any mention of said purported agreement between them, and from the intimation

which plaintiff had received from her husband's said attorney and her husband's silence in regard to it thereafter, the plaintiff did not think said instrument was a valid and binding agreement.

For the above reasons, the plaintiff repudiates and disaffirms said agreement, and asks that it may be set aside and canceled, and offers to account to the estate for her deceased husband and to the other defendants herein for all the benefits received by her under said purported agreement over and above the support which she was lawfully entitled to receive from her said husband, and for an accounting therefor. It is alleged that the testator, at the time of his death, was a citizen and resident of Henderson County, N. C., and that he died, leaving no child or lineal descendant. It is further alleged that the plaintiff, within the time allowed by law, duly dissented from the will of her said husband; and upon all the grounds above mentioned, she prays for a cancellation of said separation agreement and that she may be allowed her marital rights in the estate of her deceased husband, subject to the accounting which she tenders above.

The answer admits that the plaintiff is the widow of the testator, but denies nearly every other matter in the complaint, including the alleged North Carolina citizenship of the testator and the widow's dissent, and further charges as a defense that the plaintiff "violated her marital vows and was unfaithful to her husband, and that by reason of such conduct on her part the separation was agreed to"; and there is also denial that the plaintiff and her husband lived together as man and wife after the execution of separation agreement. At the trial neither the charge of unchastity nor the denial of cohabitation after the reconciliation was supported by any evidence. There was no plea of any statute of limitations. The controversy was submitted to the jury upon the following issues, which were answered, by consent of the parties and by the jury, respectively, as follows:

"1. Were the plaintiff and her deceased husband citizens of the State of Massachusetts at the time of the execution of the agreement, made 23 November, 1912, as alleged? Answer: 'Yes' (answered by the court, by consent of the parties).

"2. Was the alleged agreement of 23 November, 1912, set out in the pleadings, executed by plaintiff in manner and form required by the laws of North Carolina? Answer: 'No' (answered by the court, by consent of parties).

"3. Was the alleged agreement of 23 November, 1912, set out in the pleadings, executed by the plaintiff in the manner and form required by the laws of the State of Massachusetts? Answer: 'Yes' (answered by the jury).

"4. Was the alleged agreement of 23 November, 1912, such a contract as could at the time be entered into by husband and wife under the laws of Massachusetts? Answer: 'Yes' (by the jury).

"5. Was the plaintiff procured to execute said agreement by coercion or fraud, as alleged in the complaint? Answer: 'Yes' (by the jury).

"6. Was the testator, at the time of his death, a citizen and resident of the county of Henderson, N. C.? Answer: 'Yes' (answered by the court, by consent of parties).

"7. Did the plaintiff dissent from the will of the said testator within the time required by law, as alleged in the complaint? Answer: 'Yes' (by court, by consent of the parties).

"8. Did the plaintiff and the testator live together as husband and wife after 23 November, 1912, as alleged in the complaint? Answer: 'Yes' (by the court, by consent of the parties)."

Upon the foregoing verdict, the court rendered judgment that the separation agreement of 23 November, 1912, set out in the complaint, is null, void and of no effect as a bar to the rights of the plaintiff in the estate of her deceased husband, and the same is hereby vacated and canceled; and it appearing by the verdict that the plaintiff dissented from the will of said testator within the time required by law, it was further adjudged that the plaintiff should "have the same rights and estate in the real and personal property of her husband as if he had died intestate."

And the judgment further required that upon an inspection of the pleadings it is necessary that there should be an accounting by the plaintiff and the defendant as executor for all the benefits received by the plaintiff upon the agreement of separation aforementioned, which she may have received over and above the support which she was lawfully entitled to receive from her said husband. It is further ordered that Welch Galloway is appointed as referee, as upon a consent reference, to take and state said account accordingly, and file his report to the October Term, 1923, of this court.

And it being made to appear to the court that the plaintiff has filed the proceeding within the proper time for a year's allowance, leave was given her to prosecute said proceeding; and it was further adjudged that the plaintiff recover her costs in this action, to be taxed by the clerk, the cause being retained for further orders.

From aforesaid judgment the defendants appealed.

*Shipman & Justice, Boone Arledge, and Carter, Shuford & Hartshorn for plaintiff.*

*Ewbank & Whitmire and McD. Ray for defendants.*

CLARK, C. J. The first question presented in the brief of the appellants was not adjudged in the court below, but it is now contended here for the first time that the rights of the plaintiff have been lost by laches. There are questions which may be presented for the first time on appeal in the appellate court which were not presented on the trial below, but those are almost, if not entirely, confined to questions ousting the jurisdiction, or in the nature of a demurrer that the allegations in the complaint do not set forth a cause of action, and this objection need not be considered by us. Besides, there is nothing in the complaint or in the proof which would prove the plaintiff guilty of laches. Neither was the statute of limitations pleaded, and, therefore, if it might have had any bearing, it is waived.

As to the assignments of error, the first, which was for the refusal of a nonsuit at the close of the plaintiff's evidence, was waived, the defendant having offered testimony. The second assignment was for admission of the telegram from the plaintiff to her husband, dated 14 November, 1912. The plaintiff had testified, "I showed Mr. Sibley all telegrams and advised him of any communication which I had in any way," and the record states that "this testimony was offered by the plaintiff and received by the court only as showing what had occurred between plaintiff and the witness, Sibley, whose depositions about the same matters had already been offered in evidence by the defendants." The third assignment of error is expressly abandoned, as stated in the defendants' brief.

The fourth assignment of error is to the admission in evidence, over defendants' objection, of an unsigned writing, which was identified as being wholly in the handwriting of testator, as follows: "If Mrs. Satterthwaite signs the agreement, no doubt, everything will be adjusted." This paper was found, after testator's death, in a box in which he had other papers and contracts. It was couched in terms appropriate to the transaction in controversy, and was properly submitted to the jury under instructions which we must take to have been with suitable cautions from the court as to the purposes for which this evidence was to be considered, since the charge of the court is not sent up.

Assignment 5 is to the admission in evidence, over the defendants' objection, of a letter from the witness Sibley to the testator in reference to particular matters about which he testified for the defendants.

Assignments of error 6 and 7 are not to the admission of communications from the testator to the plaintiff, but to letters and telegrams wholly in the handwriting of the testator to his banker, and relate to the money admitted to have been paid to the wife under the agreement.

The eighth assignment is a blanket assignment of error for the admission of letters from the testator to the plaintiff after full identification.

These were offered by the plaintiff and were competent for the purpose of showing the relation existing between her and her husband, both before and after the agreement of separation, and for the further purpose of showing that the plaintiff and her said husband lived together as husband and wife after the execution of said agreement. The defendants offered no objection to the instructions of the court under which these letters were considered by the jury. The answer had denied that the plaintiff and the testator lived together as husband and wife after the execution of the separation agreement.

The plaintiff was not incompetent, under C. S., 1795, to testify that the signatures and papers were in the handwriting of the deceased. *McEwan v. Brown,* 176 N. C., 249; *Sawyer v. Grandy,* 113 N. C., 42; *Ferebee v. Pritchard,* 112 N. C., 83; *Hussey v. Kirkman,* 95 N. C., 63; *Peoples v. Maxwell,* 64 N. C., 313. And there are still other decisions to the same effect.

The ninth assignment of error is to the denial of defendants' motion, at the close of all the evidence, for a judgment of nonsuit. This ruling is not assailed in defendants' brief upon any ground taken in the trial court, but upon the ground of laches, which is raised in this Court for the first time. The fullness of the evidence is such as to render any discussion of this assignment of error unnecessary.

The remaining two assignments of error are merely formal. After full consideration of all the exceptions presented, we find

No error.