LEFFEK, APPELLANT, v. LUEDEMAN, ADMINISTRATOR, RE-SPONDENT.

(No. 7,116.)

(Submitted November 8, 1933.  Decided December 1, 1933.)

[27 Pac. (2d) 511.]

458

*Mr. S. P. Wilson,* for Appellant, submitted a brief and argued the cause orally.

*Mr. W. J. Paul,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action for the foreclosure of a real estate mortgage.

· John Edward O'Neill executed and delivered on May 15, 1917, to the Deer Lodge Irrigation & Agricultural Company, a corporation, a note for $1,500, maturing December 1, 1918, and another note for $1,400, maturing on December 1, 1919. These notes were secured by a real estate mortgage on certain lands and premises in Powell county, Montana. On March 25, 1919, an assignment of the mortgage, in a somewhat imperfect form, was executed and delivered to the plaintiff. The first note mentioned above was indorsed; the latter bears no indorsement. The mortgagor died on September 29, 1930, and on October 25 thereafter the defendant was appointed as his administrator, who caused notice to creditors to be given, and within the time provided by law a claim was presented on behalf of plaintiff to the administrator, which was rejected and disallowed by him. The foregoing facts were set forth in the complaint.

Defendant by answer admitted the death of the mortgagor, the appointment of the defendant as administrator, the publication of notice to creditors, the presentation of the claim, its rejection and the default in the payment of the note, and denied the other allegations of the complaint. Defendant affirmatively answered (a) that the plaintiff's cause of action is barred by section 9029, Revised Codes 1921; (b) that the plaintiff's right of foreclosure is barred by section 8267; and (c) that claims other than plaintiff's aggregating more than $12,000 were presented to the administrator and by him allowed; whereby the estate is insolvent, and therefore plaintiff is estopped from asserting the lien against the land. It is alleged in the affirmative defenses that no affidavit of renewal of the mortgage had been filed as required by the provisions of section 8267, supra.

Plaintiff by reply admitted his failure to file the affidavit of renewal and that the lands described in the mortgage were a portion of the assets of the decedent mortgagor, and that the defendant, as administrator, is the custodian of the estate property. Plaintiff affirmatively alleged payments of interest, the last of which occurred on July 6, 1923, and also that certain letters were written by the mortgagor in the year 1928, wherein he promised to pay the obligations evidenced by the notes. He alleged that these letters amounted to an acknowledgment of the indebtedness sufficient to prevent the notes becoming barred by the statute of limitations.

The cause was tried before the court sitting without a jury. The plaintiff and one Devaney, an officer of the corporation mortgagee, testified by deposition. Objection was made on the part of the defendant to the plaintiff testifying, on the ground that his testimony was inadmissible under the provisions of section 10535, Revised Codes 1921, which objection was. by the court taken under advisement. The notes, mortgage and assignment of the mortgage were received in evidence. Plaintiff testified as to the receipt of payments of interest by mail and the indorsements thereof on the notes at a time long subsequent to the date of the payments; the purchase of the notes and mortgage from the mortgagee; and the receipt through the mail of the letters relied on as a renewal or acknowledgment of the mortgage indebtedness. Devaney also testified as to the sale of the notes and mortgage to plaintiff. Defendant, called as a witness for plaintiff, testified over objection as an expert on the handwriting of the mortgagor appearing on the letters, and expressed the opinion that the signature appearing thereon was that of the mortgagor. The defendant produced evidence establishing the fact of the allowance of numerous claims to an amount which rendered the estate insolvent.

The trial court made findings of fact wherein it was found that the mortgagor was dead; that the defendant was the administrator of the mortgagor's estate; that the notes were executed and delivered on the dates they bear to the mortgagor; that decedent executed the mortgage and the same was re-

corded; that the notes were never renewed or extended during the lifetime of the mortgagor or by his personal representative; that more than eight years had elapsed since the maturity of the entire debt secured by the obligation before the commencement of the action, and no affidavit of renewal, as required by section 8267, had been filed; that no part of the principal sum or of the interest thereon as expressed in the notes had been paid, and the defendant had refused to pay the same; that plaintiff was the owner of the first note, and that no competent proof was offered on the trial establishing plaintiff's ownership of the second note; that plaintiff's cause of action is barred by the provisions of section 9029, and the lien of the mortgage had expired under the provisions of section 8267; that the estate of the decedent is insolvent and the lands described in the mortgage are a portion of the assets of the estate; that notice to creditors was published and claims presented within the time allowed by law, and that they were rejected; that the defendant was the representative of the creditors of the estate; and that by reason of the foregoing facts plaintiff was estopped from asserting his claim or from foreclosing the mortgage.

The court, as a part of its conclusions of law, disclosed that it had sustained the objection taken under advisement as to the competency of plaintiff to testify as to the facts of direct transactions or oral communications between him and the deceased. The trial court is to be commended for disclosing its ruling on the objection so taken under advisement, a practice which is not followed by many trial courts of the state.

Judgment was rendered in accordance with the findings of fact dismissing plaintiff's complaint and, in effect, quieting the title against the claim of plaintiff. The appeal is from the judgment.

The defendant contends the letters which were received in evidence were not properly admissible, in that they were communications from the deceased mortgagor to the plaintiff and therefore come within the provisions of subdivision 3 of section 10535, Revised Codes 1921. The section prohibits parties or assignors of parties to an action in whose behalf it is

prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person from testifying as to "the facts of direct transactions or oral communications between the proposed witness and the deceased," except where the exclusion of the testimony would result in injustice being done.

It will be noted that under the section a party to the action is not rendered entirely incompetent to testify, but only as to "direct transactions or oral communications." The plaintiff testified as to the receipt of the letters by mail. The question involved is whether, in the absence of the court permitting the testimony by the plaintiff to be received where it is not admitted in the discretion of the court to prevent injustice, a witness may testify as to the receipt of a letter addressed to him purporting to have been written by the deceased, in an action of this character.

The decedent could not from the very nature of the transaction have made any direct contradictory statement. True, he was a party to the transaction, but not an immediate party, at least to that part of it concerning which the proof was offered. The fact sought to be proved was not one of which he had any positive knowledge or which he could, if living, have positively denied. He could deny it indirectly by inference only, by denying that he ever wrote the letters; but this would be testimony on another fact or point as to which it was not proposed to examine the living party. His testimony, if living, would be in the nature of circumstantial evidence.

The purpose of the statute rendering a party incompetent to testify against an administrator of a deceased person in the particulars enumerated therein is twofold, namely, (a) to prevent the living party, by reason of the death of his adversary, gaining an undue advantage over the administrator, and (b) to remove the temptation for the commission of perjury by a party in the instances noted being permitted to testify to a communication or transaction as to which in all probability there can be no denial by a living person. Somewhat similar statutes obtain in many states, although usually worded somewhat differ-

ently, the more usual provision being prohibiting testimony as to "personal transactions or statements" or "any transaction or communication." Under such similar statutes it is usually held that the testimony of a party is not incompetent as against the administrator of a deceased person on a claim against the estate, as to the mailing of a letter to the decedent or the receipt of a letter purporting to be from the decedent. (*Bryan* v. *Palmer*, 83 Kan. 298, 111 Pac. 443, 21 Ann. Cas. 1214; *Josephs* v. *Briant*, 115 Ark. 538, 172 S. W. 1002, Ann. Cas. 1916E, 741; *Slavin* v. *Ackman*, 119 Wash. 48, 204 Pac. 816; *Dillon* v. *Gray*, 87 Kan. 129, 123 Pac. 878; *Daniels* v. *Foster*, 26 Wis. 686; *Britt* v. *Hall*, 116 Iowa, 564, 90 N. W. 340; *Minnis* v. *Abrams*, 105 Tenn. 662, 58 S. W. 645, 80 Am. St. Rep. 913.)

We are invited to many decisions in respondent's brief to the contrary, but an examination of them reveals that the statutes there considered rendered a party to such an action wholly incompetent as a witness, and accordingly they are beside the point under a statute such as our own.

After the letters were produced, the defendant, who was a ▮▮▮ banker and familiar with the handwriting of the decedent, testified, over the objection of his counsel, expressing an opinion that the handwriting of the signature appended to these letters was that of the mortgagor. Defendant contends that, under the provisions of section 10535, supra, the administrator may not testify against the estate. Under statutes similar to those mentioned above it is generally held, and the weight of authority is to the effect, that testimony as to the signature of a decedent by the plaintiff, where he merely expresses his opinion based on his knowledge of the handwriting of the decedent, is not within the prohibition of the statute, although he may not testify as to having seen the decedent sign the document in question, and his familiarity with the handwriting must be acquired from sources other than the instrument about which the testimony is given. (Jones on Evidence, 2d ed., 4403; *In re Estate of La Grange*, 191 Iowa, 129, 181 N. W. 807; *Sankey* v. *Cook*, 82 Iowa, 125, 47 N. W. 1077; *Britt* v. *Hall*, 116 Iowa, 564, 90 N. W. 340; *Banking House* v. *Rood*, 132 Mo. 256, 33

S. W. 816; *Satterthwaite* v. *Davis*, 186 N. C. 565, 120 S. E. 221; *Sawyer* v. *Grandy*, 113 N. C. 42, 18 S. E. 79; *Klein* v. *York*, 149 Tenn. 81, 257 S. W. 861, 31 A. L. R. 452; *Minnis* v. *Abrams*, supra; *Daniels* v. *Foster*, supra; note, 12 Ann. Cas. 671.)

We therefore conclude that the testimony as to the identity of the handwriting of the letters and their receipt by the plain-tiff was properly admitted in evidence.

Defendant contends that the letters referred to were insufficient to show an acknowledgment or promise in accordance with the provisions of section 9062, Revised Codes 1921, to prevent the notes being barred by the general statute of limitations. (Sec. 9029, Id.)

The letter of March 2, 1928, addressed to plaintiff, is as follows: "I have your letter of the 24th ult. in which you say that you are going to send notes here for collection. As stated in former letter, I am negotiating for the money to make settlement as promised, but there has been delays which I could not avoid. I am going to pay you as I said I would, and to send the notes here will only ball things up as I cannot pay them and they cannot be collected. While the Corwin people hold first mortgage and are wanting their money, you will be the first to receive settlement."

The letter of November 3, 1928, directed to plaintiff, reads as follows: "I have your letter of recent date and will say that I am putting what I can get hold of in building and loan and with a loan that I am promised from an intimate friend, I expect to be in a position to make a settlement with you in the early summer."

In the case of *Galvin* v. *O'Gorman*, 40 Mont. 391, 106 Pac. 887, 889, this court had under consideration a letter no more definite than the foregoing. It was there said: "It is equally well settled that a general promise or acknowledgment of indebtedness will be taken to relate to the demand in suit; and, wherever a promise or acknowledgment of indebtedness is once proven, the burden shifts to the defendant to show that it relates to some other debt than the one with reference to which

the promise presumably was made." On the authority of *Galvin* v. *O'Gorman,* supra, we decide that the letters were a sufficient acknowledgment or a new promise to remove or prevent the bar of the statute of limitations.

The trial court found that the plaintiff failed to produce competent evidence as to his ownership of the note sued on bearing no indorsement. Plaintiff and Devaney, the latter an officer of the mortgagee corporation, testified as to the sale and purchase by plaintiff of this note. The transaction occurred in the state of Minnesota. Plaintiff produced the note on the trial of the cause; it was in the form of a negotiable instrument payable to the order of the mortgagee. A note payable to order, prior to the enactment of the Negotiable Instrument Law, might be assigned by delivery. (*Fultz* v. *Walters,* 2 Mont. 165.) Section 8456, Revised Codes 1921, provides: "Where the holder of an instrument payable to his orders transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." This section is the same as section 49 of the Uniform Negotiable Instrument Law, and by virtue of its provisions title is vested in the transferee without indorsement upon the transfer of the note. (*Swenson* v. *Stoltz,* 36 Wash. 318, 78 Pac. 999, 2 Ann. Cas. 504; *Meuer* v. *Phenix Nat. Bank,* 94 App. Div. 331, 88 N. Y. Supp. 83; *Goodsell* v. *McElroy Bros. Co.,* 86 Conn. 402, 85 Atl. 509.) Some courts hold that the transferee without indorsement does not acquire the legal, but only the equitable, title. (*Elgin City Banking Co.* v. *McEachern,* 163 N. C. 333, 79 S. E. 680.) This is an erroneous view of the result of such a transfer, as under the statute the "transfer vests in the transferee such title as the transferor had." (See Brannan's Negotiable Inst. Law, 4th ed., 340.)

There was competent evidence in the record, which was not denied, establishing ownership of the note in the plaintiff, and the court was in error in its finding to the contrary.

The question is now presented: May plaintiff foreclose his mortgage, or secure a judgment allowing his claim for the indebtedness evidenced by the notes against the estate of the mortgagor?

Section 8267, Revised Codes 1921, provides: "Every mortgage of real property made, acknowledged, and recorded, as provided by the laws of this state, is thereupon good and valid as against the creditors of the mortgagor or owner of the land mortgaged, or subsequent purchasers or encumbrancers, from the time it is so recorded until eight years after the maturity of the entire debt or obligation secured thereby, and no longer, unless the mortgagee, his heirs, executors, administrators, representatives, successors, or assigns shall, within sixty days after the expiration of said eight years, file in the office of the county clerk and recorder where said mortgage is recorded, an affidavit, setting forth the date of said mortgage, when and where recorded, the amount of the debt secured thereby, and the amount remaining unpaid, and that the said mortgage is not renewed for the purpose of hindering, delaying, or defrauding creditors of the mortgagor or owner of the land, and upon the filing of said affidavit, the said mortgage shall be valid against all persons for a further period of eight years."

The foregoing section was amended by Chapter 104, Laws of 1933. This case, however, was tried and decided prior to the amendment, and therefore we are not here concerned with the amended statute. This court in determining the effect of the above section, in the case of *Vitt* v. *Rogers,* 81 Mont. 120, 262 Pac. 164, held that, as between the mortgagor and the mortgagee, if the debt be kept alive, the mortgage is good even after the expiration of the eight years from the maturity of the note or obligation. (See, also, *Reed* v. *Richardson,* 94 Mont. 34, 20 Pac. (2d) 1054; *Jones* v. *Hall,* 90 Mont. 69, 300 Pac. 232; *Skillen* v. *Harris,* 85 Mont. 73, 277 Pac. 803; *O. M. Corwin Co.* v. *Brainard,* 80 Mont. 318, 260 Pac. 706.)

It is the contention of the plaintiff that, under the rule announced in the foregoing decisions of this court, section 8267 is without application in this case, as the administrator stands in no different position from that in which the mortga-

468

gor would have found himself, had he been the party defendant.

█ The defendant contends that, the estate being insolvent, the administrator is the representative of the creditors and, as such, stands in the same position as a creditor who has secured a lien on the premises by process after the lapse of time specified in section 8267, and therefore in a position to attack the validity of the mortgage.

As a general rule an administrator acquires no better title █ than the decedent had. It is also true, as a general rule, that without a judgment or other legal process, or without a right recognized by law to have the property of a debtor seized and sold for his benefit, a creditor is not in a position to assert his rights against a mortgage which is void as to creditors. He is not permitted to assail or question the validity of the mortgage until by judicial process, or in some manner recognized by law, the particular property has become bound for the payment of the debt.

It is the duty of the executor or administrator to take into his possession all of the estate of the decedent, real and personal, and to collect all debts due to the decedent or to the estate. All the property of the decedent becomes chargeable with his debts, and the same may be sold under the direction of the court or. judge in the manner prescribed by law, and there is no priority between real and personal property for that purpose. (Sec. 10195, Rev. Codes 1921.) If an action is pending against the decedent at the time of his death, the claim upon which an action is brought must be presented for allowance in the same manner as other claims, and no recovery can be had in the action unless proof is made of the required presentation. (Sec. 10183, Id.) A judgment rendered against an executor or administrator upon a claim for money against the estate of his testator or intestate only establishes the claim in the same manner as if it had been allowed by an executor, administrator, or judge, and the judgment must be that the executor or administrator pay the amount ascertained to be due in the due course of the administration. (Sec. 10185, Id.) Judgment rendered against a decedent in his lifetime must

likewise be presented for allowance like any other claim, unless a lien has been acquired by levy of an execution during the lifetime of the deceased. (Sec. 10186, Id.) A judgment rendered against a decedent dying after verdict or decision on an issue of fact, but before rendition of judgment, is not a lien on the real property of the decedent, but is payable in due course of administration. (Sec. 10187, Id.) All claims against an estate of a deceased person are divided into certain classes, five in number, and no creditor of one class is permitted to receive payment until all of those of the preceding classes are fully paid. If the estate is insufficient to pay all the debts of any one class, each creditor must be paid a dividend in proportion to his claim. (Secs. 10307, 10309, Id.)

The court is charged with the duty of making orders for the payment of debts as the circumstances may require, and, if there are not sufficient funds to pay all the debts, the court must in its order specify the sums to be paid each creditor. (Sec. 10311, Id.) No action is permissible upon any claim against an estate unless it is first presented, except that the holder of a mortgage or lien may bring an action to enforce the same against the property subject thereto, where all recourse against the property of the estate is expressly waived in the complaint. (Sec. 10180, Id.) Claims are required to be presented within the time limited by statute, or they become forever barred. (Sec. 10173, Id.)

It is apparent from the foregoing provisions that a creditor, after the death of his debtor, is prevented from securing through legal process a specific lien upon decedent's property. The rights and interests of a creditor are to be determined and satisfied in the administration proceedings in the court. The legal effect of these statutory provisions is clearly to render the property of the estate bound for the payment of debts so far as it will go. The administrator of an insolvent estate represents the creditors, and only technically represents the heirs, as the latter have no real interest in the estate. This suit, therefore, is substantially a suit between the plaintiff and the creditors of the decedent, who cannot in any manner, by any legal process, secure a specific lien upon the property of the

estate. Questions not unlike the one here presented have frequently arisen in the courts with reference to the right of the administrator of an insolvent estate to assert the invalidity of a chattel mortgage.

In the case of *First Nat. Bank* v. *Ludvigsen,* 8 Wyo. 230, 56 Pac. 994, 80 Am. St. Rep. 928, the suit was brought by the mortgagee against the administrator of an insolvent estate for the replevin of certain personal property described in a chattel mortgage. The Wyoming statute (Laws 1890–91, Chap. 7, sec. 5) provided that chattel mortgages were void as against the creditors of the mortgagor and certain other persons unless the mortgage was filed as required, and that, when filed, it should remain in full force and validity for the term for which it was given, and for sixty days thereafter, and that it "shall cease to be valid as against the creditors of the person or persons making the same and as against subsequent purchasers or mortgagees in good faith" (sec. 11) unless notice of foreclosure be given or an affidavit made by or on behalf of the mortgagee exhibiting the interest of the owner and holder in such mortgage and the amount remaining due, which affidavit was required to be filed in all respects as an original mortgage. A mortgage not so renewed by the execution and filing of the affidavit under the provisions of the Wyoming law ceased to be valid "as against the creditors of the person or persons making the same." The statutes of that state with reference to the rights and duties of an administrator with relation to the property of his decedent, the allowance of claims against estates, and the rights of creditors of estates, are identical with the provisions of our own Code touching these subjects as summarized above. The court there finally concluded, after a review of the authorities, that the administrator could assert the invalidity of the chattel mortgage as the representative of the creditors, and that the mortgage was void as against such creditors so represented.

The supreme court of Ohio, in the case of *Kilbourne* v. *Fay,* 29 Ohio St. 264, 23 Am. Rep. 741, reached the same conclusion as did the Wyoming court with reference to a chattel mortgage. The Ohio statute (1 Rev. Stats. 1860, p. 476, sec. 4) provided

that chattel mortgages filed "shall be void, as against the creditors of the person making the same * * * after the expiration of one year from the filing thereof, unless, within thirty days next preceding the expiration of the said term of one year" a copy of the mortgage and statement of account was filed. It was sought in that case to enforce the lien of the chattel mortgage against the administrator of a decedent's insolvent estate. The court in the course of its opinion very aptly said: "In order to sustain the claims of the plaintiffs in these cases, it is necessary to give effect to the first section of the chattel mortgage Act as though it declared that an unfiled mortgage is absolutely void as against the creditors of the mortgagor during his lifetime; but after his death it shall be valid as against them; thus making the death of the mortgagor a substitute for the filing of the mortgage. The statute contains no such limitation or condition; but it does declare that every unfiled mortgage, without an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith. The creditors of a mortgagor do not cease to be such by his death; and so long as they continue to be such creditors, such mortgage is void as against them. By relation, the executor or administrator of the mortgagor became trustee for the creditors from the death of the mortgagor. But it is said that, under section 84 of the administration Act, all legal and equitable liens on the property during the lifetime of the mortgagor must be first paid, and that such lien existed in favor of the mortgagee during the lifetime of the mortgagor. As against whom? We admit that in life the mortgagor could not deny the validity of the mortgage; and the same may be affirmed of the heirs after his death. But the creditors, after the death as before it, were not affected by the mortgage either in law or in equity. This suit is virtually a contest between the mortgagee and the creditors. The latter are now asserting their claims against the assets in the only mode provided by law for the appropriation of the assets of their debtor to the payment of their claims. That the mortgaged property is assets in the hands of the personal represen-

tative must be admitted in order to claim the benefit of the eighty-fourth section. For it has relation to liens on assets in the hands of the executor or administrator, and nothing else. Conflicting claimants now assert their respective rights in the property; and he should prevail who has the better right as between themselves. The statute provides the rule for the decision. The mortgage is absolutely void as against the creditors.''

Like conclusions have been attained by other courts with reference to similar statutes relating to chattel mortgages in the cases of *Jordan* v. *Hamilton County Bank*, 11 Neb. 499, 9 N. W. 654; *Blackman* v. *Baxter, Reed & Co.*, 125 Iowa, 118, 100 N. W. 75, 2 Ann. Cas. 707, 70 L. R. A. 250. Also the supreme court of Pennsylvania in the early case of *Welsh* v. *Bekey*, 1 Penr. & W. 57, held that the executor of a deceased's estate might assert, on behalf of the creditors, the invalidity of a chattel mortgage which was valid between the original parties, but invalid as to creditors.

Our attention has been invited to the case of *Graham* v. *Perry*, 200 Wis. 211, 228 N. W. 135, 68 A. L. R. 267, where a conclusion at variance with the authorities cited herein was reached, which are neither cited nor discussed there. The opinion does not disclose whether or not, on death, the creditors of the decedent were deprived of the right to fasten a lien upon the property of the estate. If such right is not so lost, then the general rule would apply; namely, that a creditor of a mortgagor, before he may assert the invalidity of a mortgage, must acquire through legal process or otherwise some interest in the mortgaged property. The foregoing authorities are based largely upon the inability of the creditor to conform to this general rule as a result of legislative action. (See *In re Hopkins*, (D. C.) 1 Fed. (2d) 394.)

We therefore conclude that the executor or administrator of an insolvent estate may assert the invalidity of a real estate mortgage where no affidavit of renewal had been filed in accordance with the provisions of section 8267, and that the mortgage here under consideration was, as against the administrator, invalid and void.

Plaintiff contends that, even though the mortgage is void, the debt secured thereby not being barred by the general statute of limitations, the court erred in not entering a judgment adjudicating the indebtedness to be valid and a subsisting claim against the estate of the deceased and in not ordering its payment in due course of administration. The defendant contends that this may not be done by reason of the provisions of section 9467, Revised Codes 1921, the applicable portion of which is as follows: "There is but one action for the recovery of debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter."

This court has had under consideration the provisions of this section in a number of cases. In *Largey* v. *Chapman*, 18 Mont. 563, 46 Pac. 808, a suit was brought on a note secured by mortgage; it was attempted to waive the mortgage and secure a writ of attachment against the property of the maker of the note. It was there held that the statute in question prohibited any such express waiver.

The court in the case of *Brophy* v. *Downey*, 26 Mont. 252, 67 Pac. 312, again had under consideration the same section. The case involved an action on a promissory note to secure a personal judgment against the makers which had been secured by a second mortgage on real property. The first mortgage had theretofore been foreclosed, the mortgaged property sold, and the period of redemption had expired. The contention there made was that the holder of the note through his negligence had lost his mortgage security and could not maintain the action by reason thereof. The court in the course of its opinion quoted from the case of *Merced Bank* v. *Casaccia*, 103 Cal. 641, 37 Pac. 648, 649, which announced the rule that a mortgagee cannot foreclose his mortgage until the security has been exhausted, and wherein it was further said that, "when he has done this, or when, without his fault, the security has been lost, the policy of the law does not prohibit a personal action." From the opinion it might be inferred that this court was there recognizing the rule that, where the mortgage or security is lost through the negligence of the mortgagee, he

may not maintain an action to recover a personal judgment on the note. The court there held that the plaintiff was not guilty of negligence within the meaning of any such rule. It was unnecessary for the court in deciding the question then at hand to say more than that plaintiff did not come within the rule under the facts in the case. Whatever may have been said tending to commit this court to the adoption of the rule of the California courts with reference to the right of the mortgagee to maintain an action on the note secured by a mortgage where the mortgage or security was lost through the fault of the mortgagee was wholly unnecessary to the decision.

Again, in the case of *Barth* v. *Ely,* 85 Mont. 310, 278 Pac. 1002, the court gave consideration to the identical section of our Code. The question there for solution was whether a particular instrument creating a lien on certain property was or was not a chattel mortgage. It was held that the instrument was a chattel mortgage, and the statute applied. No question, however, was involved with reference to the waiver of the lien of the chattel mortgage or the loss of security. However, it was there said that a mortgagee could not waive the provisions of his mortgage and maintain an action on the note. Likewise, again the question of express waiver was all that was involved.

In the case of *State Savings Bank* v. *Albertson,* 39 Mont. 414, 102 Pac. 692, 694, this court gave consideration to the purpose of this statute, and therein it was said, quoting from the California case of *Merced Bank* v. *Casaccia,* supra: ''The obvious purpose of the statute is to compel one who has taken a special lien to secure his debt, to exhaust his security before having recourse to the general assets of the debtor.'' Again, in the same case, the court said: '' 'This statute is a limitation upon the rights which usually pertain to property, and the restriction will not be carried beyond the obvious import of the language used.' Of the correctness of this view we have no doubt.''

Again, this court, in the case of *Richardson* v. *Lloyd,* 90 Mont. 127, 300 Pac. 254, observed that the correct conclusion was reached in the previous Montana cases cited above, but the pronouncements of the general rule appearing therein were

entirely too broad, and therefore incorrect as applied to other fact conditions not then before the court, with which statement we agree. As we have demonstrated above, statements were incorporated in the opinions unnecessary to the results there reached on the questions submitted.

The supreme court of California, in the case of *Hibernia Savings & Loan Soc.* v. *Thornton,* 109 Cal. 427, 42 Pac. 447, 50 Am. St. Rep. 52, had under consideration the application of the corresponding section of the California Code, in a case where a mortgage had been given on a homestead by husband and wife; she died and the plaintiff failed to present a claim to the administrator of her estate. The trial court rendered a personal judgment against the defendant, the surviving husband. The property mortgaged had been set apart as a homestead in the probate proceedings, and the California court there held that, by reason of the failure of the plaintiff to file the claim against the estate of the deceased mortgagor, if the mortgage was lost by reason of such failure, plaintiff because of his neglect could not recover a personal judgment.

This court, in the case of *Largey* v. *Chapman,* supra, and in numerous subsequent decisions, has said we adopted section 9467 from California and with it the construction placed thereon by the highest court in that state at the time of its adoption. The decision in *Hibernia Savings & Loan Soc.* v. *Thornton,* supra, however, was not promulgated by the California court until October, 1895, being subsequent to the date of our adoption of the section from California, and therefore the decision is no more persuasive here than a decision of any other court from any other jurisdiction. Furthermore, there is no particular reason given in the opinion in the California case under discussion for the rule announced as applied to the facts before ▉ the court. The decision of the highest court of another state construing a statute will not be followed unless it appears that the decision is founded upon correct reasoning. It will not be followed simply because the statute was borrowed from the state after such construction. (*State ex rel. Goodman* v. *Stewart,* 57 Mont. 144, 187 Pac. 641; *Ancient Order of Hiber-*

*nians* v. *Sparrow,* 29 Mont. 132, 74 Pac. 197, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128.)

We are unwilling to adopt the construction of the California court, as there appears to be no sufficient reason supporting the conclusion reached by it. That court has since cut down the force of the decision in the *Hibernia Savings & Loan Society Case,* in the later case of *Frost* v. *Witter,* 132 Cal. 421, 64 Pac. 705, 84 Am. St. Rep. 53.

The obvious purpose of the Act is to require mortgagees who ▆ have security for debts to first exhaust it before having recourse to the general assets of the debtor, and whenever the mortgage securing a debt or the security therein is lost in any manner except when the mortgagee parts with the security for the purpose, or what amounts to the purpose, of evading the provisions of the section, the mortgagee may proceed against the mortgagor on the debt. Here, the conduct of the mortgagee in failing to file the renewal affidavit operated to his disadvantage, and to the advantage of the unsecured creditors of the decedent, who are the real parties asserting interests adverse to the plaintiff in this action. When the reason of a rule ceases, so should the rule itself. (Sec. 8739, Rev. Codes 1921.)

A somewhat similar statute in New Jersey was similarly construed by the supreme court of that state, wherein it was required that a party holding a bond, the payment of which was secured by a mortgage, "shall foreclose the latter instrument before bringing suit upon the former," the court holding that it had "no application, where the existence of the mortgage has been terminated before the institution of the suit upon the bond." (*Seigman* v. *Streeter,* 64 N. J. L. 169, 44 Atl. 888, and *Bower* v. *Bower,* 78 N. J. L. 387, 74 Atl. 522.)

The supreme court of Utah reached a conclusion in accordance with the California court, in the case of *Donaldson* v. *Grant,* 15 Utah, 231, 49 Pac. 779; the decision was founded entirely on that of the California court which we are unwilling to follow. In 19 Ruling Case Law, page 510, a general statement appears based on the California decision, and in accordance with the statements therein contained.

We fail to see where the purpose of the section in question has been in any manner violated. The statute was primarily adopted for the benefit of the mortgagor, and his rights, as we have already determined, are no longer involved, but only the rights of his creditors.

Defendant contends that the complaint is insufficient to form the basis of a judgment allowing the claim, as no new promise or acknowledgment of the indebtedness is therein alleged, relying on the case of *Weinberger* v. *Weidman,* 134 Cal. 599, 66 Pac. 869. It was there held that, if action be brought on a claim which at one time was barred by the statute of limitations and thereafter the bar was removed by reason of a new promise, the action must be based upon the new promise and not upon the original obligation. The rule announced in the California decision is the correct rule, doubtless, under the practice in that state, where the statute of limitations may be raised by a demurrer to the complaint for want of substance (16 Cal. Jur. 606), if the facts disclosed in the complaint show the cause of the barring of the action. Under such a rule, in order to state a cause of action, it would be necessary to obviate the effect of the statute of limitations by alleging appropriate facts. To adopt such a rule in this jurisdiction, where the defense of the statute of limitations can be raised only by answer (sec. 9065, Rev. Codes 1921), would lead only to a mere amorphous situation. If, under our practice, a complaint states a cause of action, although disclosing on its face that in all probability the cause of action is barred, if the defense is pleaded, nevertheless the complaint is good on demurrer. If the rule in the *Weinberger Case* were adopted, upon the filing of the answer raising the bar of the statute, the complaint would cease to state a cause of action, and no recovery could be had, even though it appears by reply, as here, that a new promise or acknowledgment had been made sufficient to remove the bar. Owing to the difference in procedure between the jurisdictions, the California rule is without application here.

The trial court was in error in not entering judgment finding the amount of indebtedness due from the deceased and ordering the defendant administrator to pay the same in due course of administration.

It is ordered that the cause be remanded, with directions to the trial court to make findings and enter judgment in accordance with the views herein expressed. Each of the parties hereto will pay his costs of this appeal.

MR. CHIEF JUSTICE CALLAWAY and JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.