JACOB J. BRION, PLAINTIFF AND RESPONDENT, v. ELIZABETH C. BROWN, AS EXECUTRIX OF THE ESTATE OF EDNA LOVINA STONE, DECEASED, DEFENDANT AND APPELLANT.

No. 9799.

Submitted April 9, 1959. Decided June 12, 1959.

340 Pac. (2d) 539.

Seth F. Bohart, Bozeman, for appellant.

H. A. Bolinger, Jr., Douglas R. Drysdale, Bozeman, for respondent. Douglas R. Drysdale argued orally.

MR. JUSTICE CASTLES:

This is an appeal by a defendant executrix in an action against the estate of Edna Lovina Stone based on a rejected $1,980 claim for personal services rendered by the plaintiff to Mrs. Stone over a seven-year period. The jury gave plaintiff a judgment for $1,344. Why the jury's verdict reduced the award, while holding for the plaintiff, cannot be determined, nor is there any reason shown in the record for the admission of the inventory and appraisement of the estate of Mrs. Stone. Part of the claim was within the statute of limitations.

For convenience we shall refer to the claimant, who is the respondent, as plaintiff; and we shall refer collectively to the interests of the executrix and to the decedent and her estate simply as "the deceased."

Since the trial the plaintiff also has died. He is now repre-

sented by his district court appointed counsel, acting as his administrator. The defendant executrix is the wife of a nephew of Mrs. Stone and this nephew is the sole legatee and devisee under Mrs. Stone's will. While not a party, his interest is among those we shall call collectively "the deceased."

The will is not contested, nor is the action brought on any theory of a contract to deed or devise. It rests entirely on a rejected wage claim for personal services.

When the services began, the plaintiff was seventy-nine years old and the deceased, his neighbor, was by then a widow, living alone, aged eighty-two. At the time of trial the plaintiff was eighty-seven. Essentially whatever services were rendered consisted of errands, neighborly courtesies and, what plaintiff himself called "little chores," beginning about January 1, 1948, and ending January 1, 1955. Although credited niether in the claim as filed, nor in the complaint, nor the bill of particulars, plaintiff rendered no services to the deceased from October 1, 1952, until about May 15, 1953, a period of nine months. But this credit does not explain the jury's reduced verdict even on plaintiff's figures.

The complaint pleads a cause of action for services and labor reasonably of the value of $1,980, no details specified. The rejected claim on which the suit is based, made part of the complaint as an exhibit, is grounded on services performed for a wage of $25 per month from January 1, 1948, to May 1, 1954, and at $10 per month thereafter to January 1, 1955, whether as an agreed amount or a reasonable wage not being shown. A bill of particulars and further bill of particulars, filed on defendant's demand, recite a wage claim for the same period, but at $1 an hour reasonable value. This varies the basis of the claim as filed.

Some of plaintiff's evidence tends to support an express contract by the deceased to deed or to devise deceased's home to plaintiff in return for the "little chores." The inventory shows this home, valued at $5,000, and clear, in an estate of $9,400 which includes $1,846.13 cash in bank and $2,500 in

Postal Savings Certificates. The testimony shows that Mrs. Stone was eighty-two years old at the time the agreement purportedly was made. Plaintiff's testimony bases the agreement on a conversation with the deceased, alone, about January 15, 1948. Except as to the chores he performed thereafter may be interpreted as corroboration, his testimony is unconfirmed.

The essence of plaintiff's claim, as originally filed with the executrix and as attached to the complaint in the suit against her is merely:

"Services rendered decedent from Jan. 1, 1948, to May 1, 1954, at $25.00 per month........ $1,900.00

"Services rendered decedent from May 1, 1954, to Jan. 1, 1955, at $10.00 per month...... 80.00

$1,980.00"

The claim otherwise is the standard printed form.

During trial, plaintiff's counsel stated that he rested his action on the theory of *quantum meruit* for wages due. This necessarily must have been his position because of the $1 hourly figure used in the bill of particulars. But, to repeat, plaintiff's testimony, admitted over continuing objection and retained over counsel's motion to strike, supports not a wage claim in *quantum meruit,* but an action to enforce a contract to deed or devise real property, removed from the bar of the statute of frauds by plaintiff's "little errands" treated as performance. This is reflected by the testimony following.

"Q. [direct examination] Now, Mr. Brion, were you ever paid anything by Mrs. Stone for the work that you did that you have testified to here? A. I never received a white dime from Mrs. Stone for labor all the time that I was there.

"Q. And did you receive any money from her while you were there? A. Well, it was—I think it was on five occasions that she put a five dollar bill in an envelope and slipped it down my jacket pocket and says 'Here's a little present for you.' * * * but I did eat with her on about five occasions * * *

the only [other] thing that I got of any value was a little coal heating stove and she said I could have that \* \* \*.

"Q. Now, Mr. Brion, why weren't you paid anything for your services by Mrs. Stone? A. Well, because we had an agreement—[objection by defendant's counsel—discussion between counsel and court—overruled] \* \* \* Well I started to work for Mrs. Stone on the 1st of January of '48 and she had asked me if I knew of anybody she could get to carry coal for her [objection repeated; overruled]. \* \* \* She said she was getting so she couldn't lug those big buckets any more and wanted somebody to carry coal for her.

"Q. And what did you say you'd do about it? A. I said I could carry it for a few days \* \* \* and I said I wouldn't charge her anything for a few days to give her a chance to find somebody to carry it. And, so, I continued to carry the coal I imagine for two weeks and she hadn't gotten anybody and so I asked her one day, I says, 'can't you find somebody to carry this coal?' \* \* \* and she says 'No, Sir.' she says, 'It's impossible' \* \* \* but she says, 'I'll tell you what I decided to do,' she says. *If you will carry this coal for me as long as I need it,'* she says, *'I'm going to deed this property to you,'* she says, *'I'll see that you get this property at my death,'* \* \* \* that's when I started working steady for her then. \* \* \* She always kept a-telling me \* \* \* 'I'll see that you get well paid for all this work you are doing for me around here' \* \* \*

"Q. And then when was the first time that you became concerned about whether she'd carry out her end of the agreement? A. Well, when she had her will signed." Emphasis supplied.

The services plaintiff performed were carrying coal, cutting wood and kindling, shoveling snow, lawn and yard care, bringing groceries, delivering small sums of deceased's money at her request to pay her bills, and essentially similar courtesies and tasks. On both direct and cross examination plaintiff's estimates of time expended for deceased were as indefinite as those given

in his bill of particulars. On cross examination plaintiff sought to justify his indefinite answers and lack of records and details by saying: "Well, I'm just telling to the best of my memory. I didn't keep no records of anything because of the deal." The executrix and two of the witnesses testifying for the defense all stated the deceased had separately told each of them that she had paid the plaintiff in full. The credibility of these witnesses was not impeached.

From the whole testimony it is apparent that the plaintiff did run errands and did perform chores and neighborly courtesies for deceased; but by plaintiff's own testimony the deceased paid for at least some of these services.

This appeal involves variance within and departure from a claim as filed against a deceased's estate for services to the deceased. Discussion of this specification of error will suffice to dispose of the appeal. Except as mentioned at the close of this opinion, no other specifications of error will be considered.

As stated, this appeal arises in an action brought to enforce a rejected claim for $1,980 *monthly* wages allegedly unpaid over a period of seven years. The complaint to enforce the claim is founded on an implied contract to pay an *hourly* wage. Both the claim and the complaint rest on *quantum meruit.* As we have shown, at the trial plaintiff's counsel stood on a theory of *quantum meruit* but was allowed to introduce plaintiff's testimony supporting a contract to deed or devise. The foregoing effects a material variance fatal to plaintiff's case. He has departed from the scope of his original claim.

Bearing in mind that under R.C.M. 1947, section 93-3905, pleadings may always be amended within sound judicial discretion in furtherance of justice, but remembering also that to expedite the closing of decedent's estate, claims are to be filed within four months after first publication of notice to creditors and actions must be brought on rejected claims within ninety days of rejection (R.C.M. 1947, sections 91-2704, 91-2709) we quote Bancroft's Probate Practice, 2d ed., section 901, pages 751-52:

*"Variance from Claim, General Rule:* It is settled by a long line of decisions that where, by statute, the holder of a claim against an estate is not permitted to maintain an action thereon unless he has first presented the claim for allowance, [R.C.M. 1947, section 91-2711] in an action after presentation and rejection of his claim *he can recover only within the scope of such claim * * *.* As the Montana court tersely remarks regarding the claim upon which an action may be maintained: 'What claim? It goes without saying that it is *the identical claim which was presented;* otherwise the law would be a dead letter'." Emphasis added.

The Montana decision quoted by Bancroft in this court's opinion in Brown v. Daly, 33 Mont. 523, 528, 84 Pac. 883, and with it are cited among many others, Vanderpool v. Vanderpool, 48 Mont. 448, 138 Pac. 772, and Harwood v. Scott, 57 Mont. 83, 186 Pac. 693. Since these decisions, this court has reaffirmed the rule in Ullman Co. v. Adler, 59 Mont. 232, 238, 196 Pac. 157, and in State ex rel. Paramount Public Corp. v. District Court, 90 Mont. 281, 289, 296, 1 Pac. (2d) 335, 340, 76 A.L.R. 1371. Dissent in the latter case agrees with the principle of the majority opinion but interprets the amendment to the claim there discussed as substantial compliance in no manner changing "the nature of the claim." See also Lindsay v. Hogan, 56 Mont. 583, 185 Pac. 1118, and State ex rel. Steinfort v. District Court, 109 Mont. 410, 97 Pac. (2d) 341, Id., 111 Mont. 216, 107 Pac. (2d) 890.

"The claimant can recover only on the claim which was presented to the personal representative, and not on a cause of action not included therein." 34 C.J.S. Executors and Administrators, section 700, pages 673, 679.

We said above that the departure is fatal. We might hold it harmless error to permit recovery in a suit varying a claimed wage rate from a monthly to an hourly basis as still substantial compliance essentially within the scope of the original claim, (see Harwood v. Scott, supra) but in a suit on a wage claim against an estate we can allow no departure to an

agreement which would transfer a deceased's real property in payment of a wage claim. This assumes a completely different theory of action. The case of Denton v. Salveson, 1957, 132 Mont. 431, 317 Pac. (2d) 1085, cited during argument, is not controlling. In that opinion the court, 132 Mont. at page 436, 317 Pac. (2d) 1087, carefully points out that the contract as alleged was not varied by the proof. Here the departure from the claim as alleged in *quantum meruit* is patent.

Of other errors specified, we say that while the further bill of particulars was not responsive to the order of the court, we do not ground our decision upon this point. See however, Munger v. Nelson, 61 Mont. 104, 201 Pac. 286; State ex rel. Cornwell v. District Court, 122 Mont. 266, 200 Pac. (2d) 706; and 1 C.J.S. Account, Action on section 8, pages 594, 595 (time of compliance). These citations all indicate that a preclusion order would have been proper upon a timely pre-trial application to the district court.

We make no ruling also on the admission of the inventory and appraisement over objection of irrelevance. The action was upon deceased's obligation to pay a debt. Ownership of her real property was not an issue. Admission was error, whether prejudicial need not be decided.

"The rules of logic are called into operation to determine the question of relevancy; and it may be said, generally, that whatever naturally and logically tends to establish a *fact in issue* is relevant, and that which fails to qualify in this respect is not relevant." 1 Jones on Evidence, 5th ed., section 151, page 270. Emphasis supplied.

"The inventory * * * is without effect on the rights of creditors." Bancroft's Probate Practice, 2nd ed., section 499, pages 645, 646. See also, Ainsworth v. Bank of California, 119 Cal. 470, 51 Pac. 952, 39 L.R.A. 686, 63 Am. St. Rep. 135; Martin v. Sherwood, 197 Okl. 422, 172 Pac. (2d) 393; 33 C.J.S. Executors and Administrators, section 138, pages 1093-1095; 21 Am. Jur., Executors and Administrators, section 179, page 471.

As to the error specified in entering judgment on a claim partially within the statute of limitations (R.C.M. 1947, section 91-2710), this specification is confirmed by the decision in Pincus v. Davis, 95 Mont. 375, 26 Pac. (2d) 986, and the prior decision in Lindsay v. Hogan, 56 Mont. 583, 185 Pac. 1118. No further comment is required.

Error specified by admission of testimony under the injustice exception to the deadman's statute need not be discussed. This is a matter of judicial discretion. Sound judicial discretion has been defined as "discerning the course prescribed by law." Osborn v. Bank of U. S., 9 Wheat. 738, 6 L. Ed. 204. See also Montana Ore Purchasing Co. v. Boston & Consolidated Copper & Silver Mining Co., 22 Mont. 159, 167, 56 Pac. 120; Bowers, Judicial Discretion of Trial Courts, Chapter 2, page 13 quoting at page 16, Bailey v. Taaffe, 29 Cal. 422, 423, and citing also Jensen v. Barbour, 12 Mont. 566. 576, 31 Pac. 592, which latter case likewise quotes Bailey v. Taafe, supra; and Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 Pac. 458.

The rules are reiterated in the pronouncements of this court in the last three cases which have dealt with the deadman's statute; (all decisions handed down after appellant's brief filed in present case); Mowbray v. Mowbray, 131 Mont. 580, 312 Pac. (2d) 995, quoting Potlatch Oil & Refining Co. v. Ohio Oil Co., D. C. 96 F. Supp. 685, and ibid, 9 Cir., 199 F. (2d) 766; In re Vincent's Estate, 133 Mont. 424, 438, 324 Pac. (2d) 403; Platts v. Platts, 134 Mont. 474, 334 Pac. (2d) 722, 730, and see Cox v. Williamson, 124 Mont. 512, 227 Pac. (2d) 614.

The holding in Roy v. King's Estate, 55 Mont. 567, 179 Pac. 821, urged by the respondent is based on a cause of action brought to enforce a claim which was in part already admitted by the defendant administrator of the King Estate. This admission in itself implies injustice if the claimant's testimony against King's administrator had been excluded. There is no such admission in the present appeal. See Pincus v. Davis, supra, and Sharp v. Sharp, 115 Mont. 35, 139 Pac. (2d) 235.

The judgment is reversed. The cause is remanded for entry

of judgment with costs to defendant, in favor of defendant Elizabeth C. Brown, as executrix of the estate of Edna Lovina Stone, deceased.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY, ADAIR and ANGSTMAN, concur.