CHARLES E. JOHNSON, Plaintiff and Respondent, v.
MOMMOTH LODE AND URANIUM EXPLORATION
CORPORATION, a Corporation, Defendant and Appellant.
No. 9884.
Submitted December 2. 1959. Decided January 12, 1960.
348 Pac. (2d) 267.

See **C. J. S.** Witnesses § 251.

Stanley R. Foot, Rankin & Acher, Helena, for appellant. Stanley R. Foot and Arthur P. Acher argued orally for appellant.

Smith Law Firm, Helena, for respondent. J. Miller Smith argued orally for respondent.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment for the plaintiff entered upon a jury verdict for the sum of $2,000. The complaint alleged that plaintiff between March 12, 1955, and December 24, 1955, performed services for the defendant corporation, for which services defendant promised to pay plaintiff wages at the rate of $15 per day; that defendant had not paid any part of the wages and that there was due plaintiff the sum of $4,305 covering 287 days labor; that demand for payment had been made and refused; that plaintiff had employed attorneys

to prosecute his wage claim and that the sum of $1,000 was a reasonable attorney fee to be taxed as a part of the costs.

By answer, defendant admitted corporate capacity, the employment of counsel, but generally denied all other allegations.

Defendant contends error in the district court in two particulars. First, in admitting testimony of the plaintiff as to the alleged oral contract of employment entered into between plaintiff and defendant corporation through his deceased son, who was president of the defendant corporation, without a proper foundation having been laid. Second, that the verdict is contrary to instructions given and by reason thereof contrary to law.

As to the first specification of error, section 93-701-3, subdivision 4, provides that persons, in whose behalf an action is prosecuted against a corporation, cannot be witnesses as to the facts of direct transactions or oral communications between the proposed witness and the deceased agent of the corporation, except where it appears to the court that without the testimony of the witness injustice will be done. The language of subdivision 4 is substantially the same as the language in subdivision 3 of section 93-701-3, dealing with the competency of witnesses in actions against an estate. This court has many times construed the meaning of subdivision 3 and the rule is the same. Phelps v. Union Central Life Ins. Co., 105 Mont. 195, 71 Pac. (2d) 887.

Defendant claims that no foundation was laid which was sufficient to permit the court to allow plaintiff to testify as to the alleged oral agreement between himself and the deceased.

The purpose of section 93-701-3, which is known as the "*dead-man's statute*," is "(a) to prevent the living party by reason of the death of the adversary, gaining an undue advantage over the administrator, and (b) to remove the temptation for the commission of perjury by a party in the instances noted being permitted to testify to a communication or transaction as to which in all probability there can be no denial by

a living person." Leffek v. Luedeman, 95 Mont. 457, 463, 27 Pac. (2d) 511, 513, 91 A.L.R. 286.

The rule to be gleaned from the decisions which have dealt ▇ with this statute is that before a witness, who is declared to be incompetent by this statute, will be allowed to testify to prevent an injustice, a foundation must be laid by the introduction of other evidence, which shows that in all probability the proponent has a meritorious cause of action. Roy v. King's Estate, 55 Mont. 567, 573, 179 Pac. 821; Langston v. Currie, 95 Mont. 57, 72, 26 Pac. (2d) 160; Pincus v. Davis, 95 Mont. 375, 384, 26 Pac. (2d) 986; Sharp v. Sharp, 115 Mont. 35, 39, 139 Pac. (2d) 235; Cox v. Williamson, 124 Mont. 512, 522, 227 Pac. (2d) 614; Mowbray v. Mowbray, 131 Mont. 580, 583, 312 Pac. (2d) 995.

This statute has also been discussed in three cases in which opinions have been handed down since the instant case was tried in the District Court, being those of Feely v. Lacey, 133 Mont. 283, 322 Pac. (2d) 1104; Platts v. Platts, 134 Mont. 474, 334 Pac. (2d) 722, and Brion v. Brown, 135 Mont. 356, 340 Pac. (2d) 539.

In other words, where other evidence establishes that the ▇ plaintiff's claim is in all probability meritorious, and yet the evidence of the oral communication or transaction between the deceased and the witness is necessary to establish his case, the court may, in its discretion, allow such evidence admitted to prevent what would otherwise be an obvious injustice.

Here there is absolutely *no* evidence, independent of the testimony of the plaintiff, which corroborates the existence of an express contract whereby the deceased agreed to hire plaintiff for 287 days or any other period at the rate of $15 per day. Plaintiff's witness, Don Gruber, who had been an employee at the mine for less than a month of the period for which plaintiff claims wages, testified that he had seen plaintiff around the mine doing odds and ends, but that he "didn't know just what the deal was on him." Plaintiff's other witness, Olaf

Olstad, who had worked at the mine for about a week, testified only that he had seen plaintiff at the mine, but did not testify as to what plaintiff was doing there. Thus it is apparent that no other evidence with regard to any oral contract was presented in plaintiff's case.

This is precisely the kind of a case where the *dead-man's* ▮ *statute* should prevent the plaintiff from testifying as to an alleged oral contract. There is absolutely no foundation tending to corroborate the agreement, and the court committed prejudicial error in allowing plaintiff to testify thereto. On the contrary, the evidence presented by defendant indicates that there was no express contract. Andrew Anderson, vice president and stockholder of the corporation, testified that plaintiff's son, the deceased, had plaintiff at the mine to keep him away from his wife, with whom plaintiff was having difficulties. This was corroborated by testimony of Ray Middlesworth, president of defendant corporation, who also testified deceased had told him plaintiff was in no way employed by the corporation. Hugh Gaw, bookkeeper for the corporation, testified that while all time slips for laborers were turned over to him, no time slips were ever received for any labor performed by plaintiff. He testified further that plaintiff was never listed as an employee in reports to the State Unemployment Compensation Commission or to the Internal Revenue Service. William Martin, present secretary-treasurer of the corporation, was never presented with any claims by plaintiff for wages. It was stipulated that no claim for wages was made by plaintiff during 1955.

The defendant's second specification of error, to the effect that the verdict is contrary to law, is likewise meritorious.

The court instructed the jury as follows:

"Instruction No. 7. The plaintiff has neither alleged nor sought to prove the reasonable value of his services. Therefore, you would not be permitted to allow plaintiff compensa-

tion based upon an implied contract or based upon the reasonable value of the services rendered, if any were rendered.

"Instruction No. 8. You are instructed that the plaintiff has alleged that the defendant corporation had entered into a contract with the plaintiff to pay him wages at the rate of Fifteen Dollars ($15.00) per day. The plaintiff under the law is obliged to prove by a preponderance of the evidence that such a contract was actually entered into by and between the plaintiff and the defendant corporation, acting by and through an officer thereunto duly authorized."

The proof of the plaintiff was that he worked 287 days, ██ and that the defendant owed him the sum of $4,305. The verdict was but for $2,000 and would indicate that the jury did not follow the court's instruction but allowed the plaintiff what it considered a reasonable sum for the value of his services. The instructions given became the law of the case. McDonald v. Peters, 128 Mont. 241, 272 Pac. (2d) 730. A verdict contrary thereto would be against law and necessitate a new trial. Ingman v. Hewitt, 107 Mont. 267, 86 Pac. (2d) 653. There exists no basis in the evidence for a verdict for the plaintiff in the sum of $2,000 consistent with the court's instructions.

Respondent contends that upon performance of an express ██ contract for services at a stipulated compensation, such as we have here, recovery may be had upon *quantum meruit*. There is no question that this is a correct statement of the law and was recently discussed by this court in Denton v. Salveson, 132 Mont. 431, 317 Pac. (2d) 1085. Respondent, however, overlooks the fact that the doctrine applies to an action brought on *quantum meruit,* not, as is the situation here, to one brought on an express contract. The issue in this case raised by the pleadings was whether or not the contract was entered into as alleged, and if so, was it performed. Should both of these matters be proved, then plaintiff was entitled to a ver-

dict, not upon a *quantum meruit* but upon the contract as pleaded and proved.

In our view the evidence in this cause decidedly preponderates in favor of the defendant and against the plaintiff and it would be an idle act to return the case to the District Court for another trial.

The judgment is reversed and the cause remanded to the District Court with instructions to dismiss the action.

MR. JUSTICES ANGSTMAN and CASTLES concur.

MR. JUSTICE ADAIR concurring in the reversal of the trial court's judgment but dissenting to the order of dismissal.

The record herein indicates that the jury failed to observe and follow the trial court's instructions numbered 7 and 8. By reason of such fact, the cause should be remanded to the District Court or another trial rather than ordering the dismissal of the case. Accordingly, I am unable to concur in the majority's disposition of the appeal and am of the opinion that the trial court's judgment should be reversed and the cause be remanded for a new trial.