NICK DeLEON, Plaintiff and Appellant, v. E. W. Mc-
NINCH, Defendant and Respondent.

No. 10886.

Submitted May 12, 1965. Decided October 1, 1965.

407 P.2d 45.

Mr. Chief Justice James T. Harrison and Mr. Justice John
C. Harrison dissented.

Poore, Poore & McKenzie, Robert A. Poore (argued), Butte,
for appellant.

Corette, Smith & Dean, Kendrick Smith (argued), Butte, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal by the plaintiff from a judgment following a jury verdict in the amount of $1,653.50 for the plaintiff resulting from an automobile collision. The case was tried in Beaverhead County before the Honorable Philip C. Duncan of the Fifth Judicial District of the State of Montana.

Although there is no question of liability on this appeal a brief resume of the facts involved in the accident is necessary. The plaintiff is a 60 year old man, a resident of Melrose, Montana, where he owns and operates a bar. On the morning of August 31, 1962, he drove his 1960 Ford automobile to Dillon to get haircuts for himself and three sons. While waiting second in line for a stop light to change, he was bumped from the rear by the defendant driving his car. The plaintiff and his passengers testified that the light was red at the time of the collision. The defendant and his two passengers testified that the light had turned green and that the plaintiff had started forward, then stopped abruptly thereby causing the accident. The witnesses also differed as to the magnitude of the impact. In any event, the jury found the defendant negligent and therefore liable.

The plaintiff alleged that as a result of the accident he had serious, extensive and permanent bodily injuries causing pain and suffering and impairment of his gainful occupation. He testified that while seated in the barber's chair an hour or so after the mishap, he felt pain in his neck and developed a headache. He later contacted Dr. F. P. Duchesneau of Butte and alleges that, as a result of the injury, he has seen him some fifty-one times since for treatment. At the time of trial Dr. Duchesneau testified that further treatments would be necessary. The plaintiff complains that since the accident he has had constant headaches, pains in his neck and back, numbness in his left hand, and an impairment of his sight and hearing.

Two physicians, Dr. Duchesneau and Dr. H. D. Rossiter were placed on the witness stand by the plaintiff. The defendant put Dr. Loren G. Hammer on the stand and had another, Dr. M. A. Gold, testify by deposition. All agreed that the plaintiff's back was not normal. Each found that there was a loss of normal lordotic curvature of the cervical spine and displacement of cervical vertebra 4 and 5. The radiological report of a fifth physician, Dr. James G. Sawyer, was admitted into evidence over plaintiff's objection during cross-examination of Dr. Duchesneau. Dr. Duchesneau had sent the plaintiff to Dr. Sawyer to have X-ray photographs taken which were later used by Dr. Duchesneau in making his diagnosis. Appurtenant to the photos was the report in which Dr. Sawyer stated that the plaintiff's back and neck were normal.

Plaintiff-appellant alleges first that it was error to admit into evidence the written radiological opinion of Dr. Sawyer, when the doctor was deceased and therefore could not be cross-examined. Plaintiff relies on the recent decision of this court, Shillingstad v. Nelson, 141 Mont. 412, 378 P.2d 393, in which it was held that unsworn medical reports, where no right to cross-examine is had, are hearsay and inadmissible. It should be noted that the facts of the Shillingstad case are not the same as here. We see no need, however, to pass on the question of whether the Shillingstad rule applies to this case. The fact is that error or no error, we can find no prejudice in the admission of Dr. Sawyer's report.

Plaintiff urges that it was prejudicial in that the report was the only medical evidence that after the accident the plaintiff's neck was normal. In fact, according to the plaintiff, it was the only evidence upon which the defendant could substantiate to the jury his claim that the plaintiff "wasn't damaged in any sum whatsoever." We cannot agree with this contention.

The record reveals considerable evidence which would support a conclusion that the plaintiff suffered little or no injury. To begin with, passengers in the defendant's automobile testi-

fied that the jolt from the collision of the two vehicles was a mild one. The defendant's wife revealed that a pan of jello and a chocolate cake on a plate in the back seat were undisturbed by the impact. Neither she, nor Walter Sibrel, a passenger in the front seat of the defendant's car were jostled about. The plaintiff testified that his hat was knocked off. Nevertheless he suffered no cuts, bruises or broken bones. At the time of the accident he said he felt no pain. He testified that he first felt pain in his neck about an hour later while in the barber shop receiving a haircut. The barber, however, did not recall any complaint of pain made by the plaintiff at that time. The plaintiff was able to get along without a neck brace at all times. It is interesting that one was prescribed, but not until after he had been examined by the defendant's physician. He appeared at trial not wearing the brace and testified that it did not bother him to be without it.

It is true that only Dr. Sawyer found the plaintiff's neck to be normal. However, this does not mean that his was the only medical testimony unfavorable to the plaintiff's case. Dr. Gold described the separation of C-4 and C-5 as a normal condition of age. He said that arthritis of the cervical spine could be causing the pain plaintiff complained of. Dr. Gold found no condition that could be ascribed to a car accident. The testimony of Dr. Hammer was substantially the same, although he said the loss of normal cervical curvature might have been caused by the mishap. He also said it could have been occasioned by arthritic changes. This loss he described as "mild."

Dr. Sawyer's report was merely additional evidence substantiating the defendant's case. It was cumulative, even though his findings differed from those of Drs. Gold and Hammer. The effect of each analysis was the same, that is, to gravitate against the plaintiff's claim. Defendant's contention of "damages in no sum whatsoever" did not hinge upon the admission of Dr. Sawyer's report. It was supported by the other evidence here referred to. Additionally Dr. Duchesneau was

allowed to, and did explain his reasons for differing with Dr. Sawyer's report. No prejudice therefore resulted.

The plaintiff's second specification of error is that in awarding damages the jury disregarded uncontradicted, credible evidence which they were not at liberty to do. Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1.

The allegation is that the following past expenses were absolutely proved and under the instructions given should have been included in the award:

| | |
|---|---:|
| Dr. Duchesneau | $ 395 |
| X-rays | 55 |
| X-rays | 25 |
| Examination and X-rays (Western Montana Clinic) | 104 |
| Dr. Plett | 23 |
| Thomas Collar (neck brace) | 12.50 |
| Mileage from Plaintiff's Melrose home to doctor's (Butte) office and return—51 trips (2,570 miles at .12 cents per mile) | 428.50 |
| Mileage from Plaintiff's home to Missoula Clinic and return (300 miles at .12 cents per mile) | 36 |
| Car damage | 300 |
| Total | $1,378.90 |

In addition, the jury was instructed to award damages for expenses reasonably certain to be incurred in the future. The plaintiff contends that the evidence is uncontroverted that the non-speculative and immediately foreseeable cost of treatment would be $292.80. This makes a total of $1,671.70 in uncontradicted, credible expenses. The jury's verdict for $1,-653.50 was $18.20 less than out-of-pocket expenses not to mention loss of earnings and pain and suffering. Thus, so the argument runs, the award was contrary to the law as being in conflict with the court's instructions which are the law of the case. Johnson v. Mommoth Lode and Uranium Exploration Corp., 136 Mont. 420, 348 P.2d 267.

We have already seen that all of these items were in dispute

by reason of the fact that the very existence of injury at all was in dispute to say nothing of the extent thereof. All of the facts already alluded to in considering the first specification of error justify a jury in finding that not all of the expenses incurred for examination and treatment of the plaintiff's neck and back could be attributed to the accident. Also, the $300 for car damage may well have been passed over by the jury. The fact is that a friend repaired the car at no cost to the plaintiff whatever.

In short, we feel that there was the required substantial evidence supporting the jury's verdict. Greenup v. Community Transit Co., 145 Mont. 39, 399 P.2d 418. They felt that the defendant's liability was for damages to the plaintiff in the amount of $1,653.50. We see no reason to interfere with their decision.

Judgment affirmed.

MR. JUSTICES ADAIR and CASTLES concur.

MR. JUSTICE JOHN C. HARRISON dissenting:

I dissent. I would order a new trial. I believe more consideration should have been given to both the facts and the law of this case.

The majority opinion makes light of the effect of the collision but the fact remains that Mr. DeLeon's car was hit so hard that even though he had his foot on the brake the car was thrown forward some 10 to 12 feet where it bumped into another car. In addition, it is interesting to note from the testimony of both parties that the woman who was driving the first car came back and registered a complaint to both drivers. Unfortunately she was unknown and the plaintiff was unable to find her at the time of trial. While the sound of the crash was not loud enough to be heard around the world, the results of the crash showed that defendant's car suffered $225 damage and the plaintiff's damage was $300.

The first issue presented on this appeal was whether the ad-

mission of Roentgenological Interpretation given by Dr. Sawyer, a separate report accompanying the X-rays taken by Dr. Sawyer, into evidence was prejudicial error.

As the majority opinion notes, this court recently considered the question of the admission of medical reports where there is no opportunity to cross-examine the maker of the report, in the case of Shillingstad v. Nelson, 141 Mont. 412, 378 P.2d 393. There this court held that the admission of such an unsworn report was hearsay and not within an exception to the rule against hearsay evidence.

Recognizing that every case has a different fact situation and that the facts of the Shillingstad case are different from this case, we should however be bound by the law unless the facts presented here bring the case within an exception of the hearsay rule. The prejudicial effect of Dr. Sawyer's interpretation is obvious, "normal cervical spine." It is clearly hearsay and as such should have been excluded unless coming within some exception to the rule against hearsay evidence. As to what is hearsay evidence see 58 Am.Jur, Witnesses, § 622; 31A C.J.S. Evidence § 193; 98 C.J.S. Witnesses § 377b; 5 Wigmore on Evidence (3rd ed.), § 1361, p. 2. The necessity of establishing an exception to the hearsay rule is recognized by counsel for the defendant respondent in his argument that:

(1) The witness, Dr. Duchesneau, was being cross-examined, and great latitude is permitted in the cross examination of a medical expert.

(2) The witness, Dr. Duchesneau, had testified at length on his interpretation of the very same X-rays, which he ordered Dr. Sawyer to take and upon which he routinely secured a report from Dr. Sawyer.

(3) A portion of the evidence was in evidence and the remainder was properly admitted.

(4) The report by Dr. Sawyer was a part of the professional records of Dr. Duchesneau.

While I agree with counsel that wide latitude is and must be

allowed in the cross-examination of expert witnesses, but to allow him to get into evidence a report which under the rules governing the admission of evidence is otherwise inadmissible, would in my opinion do violence to the trial practice. Most certainly counsel could have asked Dr. Duchesneau whether Dr. Sawyer agreed with his interpretation of the X-rays, but the admission of the unsworn report with no opportunity to further explore by the plaintiff is in my opinion prejudicial, particularly in view of the fact they were the first X-rays taken and within a very short time of the accident.

MR. CHIEF JUSTICE JAMES T. HARRISON dissenting:

I dissent and concur in the foregoing dissenting opinion of Mr. Justice John C. Harrison.

I should like to discuss briefly the second specification of error which covers the insufficiency of the verdict awarded plaintiff.

As shown by the majority opinion, plaintiff contended that the verdict was $18.20 less than out-of-pocket expenses, not to mention loss of earnings and pain and suffering. The jury was properly instructed as to these items of damage but it is apparent that the jury did not follow the court's instructions as to the damages.

While the majority are of the opinion that there was substantial evidence to support the jury verdict, I cannot agree in that respect.

The plaintiff is still under his doctor's care, and his doctor testified to further treatment necessary in that plaintiff would have to be observed for another six months and if certain conditions occurred then more radical treatment would have to be undertaken; defendant's physician witness testified to further treatment that he would prescribe for the plaintiff. Both doctors outlined further treatment as necessary.

In view of this evidence I have searched the record to account for this small award in view of the jury's determination fixing liability upon defendant.

This brings my thinking back to the primary issue, the admission of Dr. Sawyer's report giving his opinion that plaintiff's neck was normal, as discussed in the dissenting opinion of my associate. In the circumstances existing in this case it may be that the jury laid great stress upon Dr. Sawyer's opinion, I cannot explain the size of the verdict in any other manner.

In view of the hearsay rule, coupled as it is in this case with a verdict obviously in disregard of the law of the case as laid down in the court's instructions, I most sincerely believe that the admission of the report was prejudicial.

These being my views I would order a new trial.