CLEM A. S. DAVISON, Plaintiff and Appellant, *v.* DAVID
D. CASEBOLT and DARLEEN M. CASEBOLT, Defend-
ants and Respondents.

No. 11606.
Submitted Sept. 19, 1969.
Rehearing Denied Dec. 2, 1969.
461 P.2d 2.

Daniels & Taylor, Deer Lodge, William R. Taylor argued, Deer Lodge, for appellant.

Allen LeMieux, argued, Boulder, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on findings of fact and conclusions of law after trial without a jury.

Plaintiff Clem Davison is the assignee of a note and mortgage given by defendants to his brother Merrit Davison, who died September 6, 1963.

Defendants Casebolt are husband and wife. In February 1963, defendants negotiated for purchase of one-half section of land from Merrit Davison. Defendants gave instructions to attorney John Jardine, who prepared: (a) a deed for the land, (b) a real property mortgage, (c) a promissory note, (d) a satisfaction of mortgage, and (e) a letter from defendants to Merrit Davison giving him permission to reside on the property until either he left permanently or died.

The 320 acres of land were purchased for $2500. No down payment was required and no interest on the indebtedness represented by the note was required. Payments of $30 per month were required. Defendants Casebolt were casual friends of Merrit Davison.

On February 25, 1963, defendants executed and delivered the promissory note to Merrit Davison. On the same day the defendants executed the mortgage which was not recorded until May 7, 1963. Also on that day, February 25, 1963, the deed was signed and a satisfaction of mortgage signed, together with the letter mentioned above. The satisfaction of mortgage was retained by attorney John Jardine who put it in his office safe in an envelope on which he had typed the following notation: "To be delivered to Dave Casebolt in the event of the death of Merrit Davison."

Sometime in April 1963 Merrit became ill and on April 28 was placed in a rest home for six days. Plaintiff, Merrit's brother, was called in Anaconda; he came to Whitehall and discussed Merrit's affairs with him. Merrit was moved to Fort Harrison on May 3. On May 6 Clem, at Merrit's direction, went to attorney John Jardine and had an assignment of the mortgage and note prepared. Clem also introduced himself to Casebolt and picked up some of Merrit's personal property. Clem took the assignment to Fort Harrison where Merrit signed it before a notary public on May 7, 1963.

On May 6, plaintiff Clem Davison discussed the mortgage with attorney John Jardine. Up until that time Jardine had the mortgage in his office and apparently had not recorded it because he had not been paid the recording fee. Clem paid the fee and the mortgage was recorded May 7. The assignment of the mortgage was recorded May 20.

Meantime, according to the terms of the note, defendants Casebolt paid $30 per month to Merrit. On May 14, Clem displayed the assignment of the mortgage to defendant Darleen Casebolt and on June 1 and thereafter until September 1, 1963, Casebolts paid 4 payments of $30 per month to Clem.

On May 15 Clem, after talking to brother Merrit at the Fort Harrison hospital, went to Merrit's home and tried to find the promissory note. It was not where Merrit said it would be. The note, meanwhile, came into defendant David Casebolt's possession when he went into Merrit's house and found it on the floor. He did not reveal his possession of the note until his deposition was taken almost 4 years later.

Merrit died on September 6, 1963. Casebolt stopped making the monthly payments. To that time they had paid 7 payments of $30 each on the $2500 note. Subsequently, on October 9 Casebolt went to John Jardine's office and demanded the satisfaction of mortgage. John Jardine gave it to him, reluctantly as he testified, because since then there had been the assignment of the mortgage.

128

Plaintiff's complaint was for the balance due on the promissory note secured by the real property mortgage.

The only defense really relied upon in the answer was—that contemporaneously with the execution of the mortgage and note Merrit Davison gave his agent, attorney John Jardine, the satisfaction of mortgage with instructions to deliver it on death; that the intention of Merrit was that payment obligations would terminate on death.

The district court found for defendants, concluding:

"That the satisfaction of mortgage was not a gift but was part and parcel of the entire transaction and ranch sale agreement, and was for the purpose of carrying out the provision of that agreement that any indebtedness thereon that might remain owing to Merrit E. Davison at the time of his death was to be thereupon cancelled and the mortgage then satisfied, and was a part of the consideration of the entire agreement."

The five instruments referred to previously do *not* vaguely hint that there was to be a gift of any part of the unpaid balance. In fact to the contrary. The letter referred to granting permission to reside on the property even refers to "purchase your 320 acres * * * under such favorable terms." We reiterate that none of the written instruments in any way set up a gift.

During the trial defendants attempted to change their position, in effect. The following occurred in the testimony of defendant David Casebolt:

"Q. Now were there any discussion between you and Merrit Davison before the time this agreement was signed as to payments on the mortgage in the event that Merrit passed away?

"Mr. Taylor: Now just a moment, to which I object on the grounds and for the reasons attempting to vary a written instrument by parole evidence and attempting to bring in conversations contrary to the dead man statute and it's attempt to elicit a self-serving declaration.

"THE COURT: What was the question? (Question read)

"THE COURT: Well, I'll let him answer.

"Mr. Taylor: What was that, your Honor?

"THE COURT: He may answer yes or no.

"A. Yes.

"Q. What was that conversation?

"Mr. Taylor: Now to that question and the proposed answer we make the objection that I just made that it's contrary, it's attempting to vary a written instrument modified by parole evidence and it's contrary to the dead man statute and it's an attempt to elicit a self-serving declaration.

"THE COURT: I'm going to let him answer, and reserve my ruling on your objection.

"A. Yes. When we were making this agreement, Mr. Davison was in his 70's and this was actually the first bona fide big transaction I had ever entered into and so this came up. I asked him, I said, 'I hear from the neighbors that you do have a brother and we should make some kind of arrangements just in case you die and what would I do for the payments?' And he said he didn't think his brother needed the place, 'so you could just as well have it. Where I'm going I won't need it.' So this is what I conveyed to Mr. Jardine and he wrote up the documents as such."

The foregoing testimony, objected to and never ruled upon, is the only testimony remotely bearing on the court's conclusion heretofore quoted that a separate oral agreement as to consideration for the entire agreement was a gift.

The issue presented is whether the court erred in determining that placing a satisfaction of mortgage with the agent of deceased seller was consideration for sale of the property.

Put another way, plaintiff-appellant urges that the placing of the satisfaction of the mortgage was at most a gift causa mortis which was revoked by written assignment of the note and mortgage to the plaintiff.

Respondent-defendants first meet the issue by urging that since no exceptions to the trial court's findings of fact were made they are final. Section 93-5305, R.C.M.1947; Stapp v. Nickels, 150 Mont. 220, 434 P.2d 141. Heretofore we have quoted what we call conclusions of the trial court. We need not dwell on the neat distinctions of findings of fact and conclusions of law since clearly here we are dealing with legal conclusions.

The evidence quoted above was clearly inadmissible; without it there simply is no evidence of any oral agreement that the debt was cancelled upon the death of the assignor.

Section 13-607, R.C.M.1947, states:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

This Court has frequently held that written contracts supersede all oral negotiations. See Riddell v. Peck-Williamson Heating & Ventilating Co., 27 Mont. 44, 69 P. 241.

Not only that, but to allow the testimony of a witness of oral transactions with a deceased person also violates section 93-701-3, R.C.M.1947.

Thus, here, the district court could only have made its findings and conclusions based upon erroneously admitted evidence. Significantly, none of the written documents made any reference to any such gift; nor at the time attorney John Jardine prepared the assignment of the mortgage was anything said about the satisfaction. It was as if Jardine was simply an escrow holder, the note to be paid before the satisfaction was delivered.

The decision and judgment of the district court is not supported by any credible evidence and thus must be reversed. The judgment is reversed and the district court shall enter judgment for plaintiff.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUS-
TICES HASWELL and JOHN C. HARRISON and the HON-
ORABLE THOMAS DIGNAN, District Judge, sitting for Jus-
tice BONNER, concur.