No. 12077

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

YENS HANSEN,

                Plaintiff and Respondent,

    -vs-

LEE KIERNAN, Administrator of the Estate of
JOSEPH PATRICK KIERNAN, deceased, et al.,

                Defendants and Appellants.

---

Appeal from:  District Court of the Third Judicial District,
              Honorable Sid G. Stewart, Judge presiding.

Counsel of Record:

    For Appellants:

        Tipp, Hoven and Brault, Missoula, Montana.
        Raymond W. Brault argued, Missoula, Montana.

    For Respondent:

        William R. Taylor argued, Deer Lodge, Montana.
        James J. Masar, Deer Lodge, Montana.

---

                Submitted:  April 21, 1972

                Decided:  JUL 11 1972

Filed:  JUL 11 1972

Thomas J. Kearney
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment and decree of the district court of the third judicial district, Powell County, sitting without a jury, ordering specific performance of an oral agreement entered into by plaintiff Yens Hansen and decedent Joseph Patrick Kiernan. The court further ordered all monies that have accrued and will become due to the benefit of decedent's estate as a result of the former partnership to be paid to plaintiff.

By his amended complaint, plaintiff asked (1) for a declaration and adjudication of the rights of plaintiff and the estate of Joseph Kiernan, deceased, to monies due under a contract for deed agreement; (2) that the district court enter judgment establishing an oral contract between plaintiff and decedent; and (3) a decree that as a result of the contract plaintiff is entitled to all monies that have accrued and will become due under the contract for deed.

Defendant in the instant suit is the administrator of the estate of Joseph Patrick Kiernan, Lee Kiernan. It is defendant's position that a partnership existed between plaintiff and decedent but that the partnership terminated with Kiernan's death and there is now due his estate an accounting of the partnership affairs. Further, all testimony relating to an alleged oral agreement between plaintiff and decedent to execute mutual wills was inadmissible under the so-called "dead man's" statute, section 93-701-3, R.C.M. 1947.

The uncontested facts indicate that in 1932 Joseph Kiernan, a single man 43 years of age, entered into an oral partnership agreement with Yens Hansen, a single man 28 years of age. The partnership agreement provided that Hansen and Kiernan would purchase a 331 acre ranch known as the "Jacklin Place" near Elliston,

Montana, for the purpose of engaging in the ranching and cattle raising business. The partnership flourished and in 1940 they purchased additional property known as the "Hat Creek Place" consisting of approximately 419 acres.

At various times during the period 1932 - 1941, both Hansen and Kiernan sought outside employment to earn cash and each contributed his earnings to the partnership. While it may seem unusual that such an undertaking was only supported by an oral agreement, it should be noted that Hansen and Kiernan had known each other since 1914, and Kiernan had resided at Hansen's grand-parents' ranch for a number of years previous to 1932. There is every indication that they were not only good friends, but were also amiable and diligent business partners.

On January 23, 1941, the partners executed formal written articles of copartnership. The articles provided, among other things, that they would:

> "* * * become copartners in the ranching and
> farming business under and by the name, firm and
> style of 'Kiernan & Hansen.' * * *

> "That the term of said partnership * * * shall
> end whenever the parties may terminate said partner-
> ship by mutual consent with or without a written
> agreement of dissolution. * * *

> "At the termination of this partnership, by expira-
> tion of the term or by reason of any other cause
> * * * the debts of the partnership shall be dis-
> charged; and all money or other assets of the part-
> nership then remaining, shall be divided between
> the parties, share and share alike * * *."

In 1942 Hansen was drafted into the United States army at the age of 38. Before leaving for active duty Hansen, re-cognizing the uncertainties of wartime military service, executed a will whereby he bequeathed and devised his personal and real property to Joseph Kiernan, leaving only his "good will" to his heirs-at-law. The will was mailed to Kiernan and deposited by him in his safety deposit box. At all times after receiving Hansen's

- 3 -

will, Kiernan had access and control over the will.

At trial, over the objection of defendant's counsel, Yens Hansen testified that in 1942 due to his impending military service he and Kiernan entered into an oral agreement to execute mutual or reciprocal wills whereby each of them would give, devise, and bequeath to the other all of his right, title and interest in all of their real and personal property except a certain homestead belonging to Kiernan. He testified that pursuant to such agreement he executed the aforementioned will, thus fully performing his part of the agreement.

Plaintiff further testified that during the 33 months he spent on active duty Kiernan continued to operate the partnership; that he sent home to Kiernan the sum of $800 to be expended for the ranching partnership; and, that upon his discharge he contributed an additional $800 to the partnership.

In 1945 the partners purchased additional property known as the "Donovan Place" consisting of approximately 360 acres. In 1960, they purchased another ranch consisting of approximately 800 acres. In 1960 Kiernan became afflicted with arthritis which required him to use a cane and eventually crutches in order to get around. This so restricted Kiernan's activities that the partners agreed to sell their partnership and, in effect, retire.

In 1966 the partners entered into an agreement with two prospective purchasers for the sale and purchase of all of the real and personal property of the partnership. The partnership was sold under a contract for deed agreement the terms of which provided for a down payment and a balance due of $85,200 to be paid in ten equal annual installments, the first due on November 15, 1967.

An escrow agreement, warranty deed, abstract of title and insurance policies were held in escrow by the Deer Lodge Bank &

Trust Company. An escrow receipt was issued to the parties which recited the escrow agent would:

"Credit payments to Sellers, by escrow check made payable to both sellers".

Hansen testified that in the fall of 1966 he and Kiernan made a "special trip down here to the bank in Deer Lodge on account of that" escrow receipt. "* * * it didn't leave any provision for the survivor of us * * *." He testified he and Kiernan explained to the bank cashier (since deceased) that they wanted the wording of the escrow receipt changed:

"* * * so that if anything happened to either one or the other of us, that the money would automatically go to the other one * * *."

As a result of this meeting, the escrow receipt was modified by interlineation to read:

"Credit payments to Sellers, checking account # 14-509".

This change was signed by Hansen and initialed by Kiernan.

Checking account #14-509 had been used by the partners during the existence of their partnership. Each partner had the right to draw on this account. After the sale of the partnership assets, Hansen and Kiernan continued to use this account for their personal use.

Following the sale of the partnership assets Hansen and Kiernan continued their association and friendship. They took motor trips together to Alaska and California; they purchased a residence in Missoula in joint tenancy with the right of survivorship; they had two savings accounts, both in joint tenancy; and they purchased corporate stock also in joint tenancy.

On April 8, 1968, Joseph Kiernan passed away. No will was ever located. Plaintiff brought the instant action for specific performance of the oral agreement entered into between himself and Kiernan in 1942 to execute mutual or reciprocal wills. Here, the problem is to determine who is entitled to the balance of the

payments due under the contract for deed agreement paid after Kiernan's death and those still to be paid---Hansen or Kiernan's heirs under the intestacy laws?

The trial court held that there had existed an oral agreement between Hansen and Kiernan to execute mutual wills; that Hansen had performed his part of the agreement; that Kiernan had failed and neglected to perform his part of the agreement; and, therefore, specific performance of the agreement by the administrator was ordered.

Defendant raises eleven issues for review on appeal which we believe can be more succinctly stated as:

1. Whether the trial court erred in refusing to hear defendant's preliminary motion to strike because of a local court rule requiring the filing of briefs with such preliminary motions.

2. Whether testimony relating to conversations and agreements between the plaintiff and decedent were properly admitted under the "dead man's" statute, section 93-701-3, R.C.M. 1947.

3. Whether defendant's post-trial motion to dismiss should have been granted, due to the running of the statute of limitations.

4. Whether plaintiff was guilty of laches.

5. Whether the attempt to enforce the oral agreement varied the terms of the written articles of copartnership.

6. Whether the trial court ruled specifically on the objections raised at trial.

Issue 1. We find that prior to trial defendant had properly filed and noticed a motion to strike certain portions of plaintiff's amended complaint. On the date set for hearing of the motion the trial judge summarily denied the motion, because of defendant's failure to file a brief in support of the motion in accordance with a local court rule.

- 6 -

While defendant has <u>raised</u> this issue on appeal, it has not been argued either in defendant's brief or during oral argument before this Court. We can only surmise that this specification of error has been abandoned and we will not consider it further, except to say that such rules of practice may be adopted and enforced by the district courts in accordance with section 93-502, R.C.M. 1947, and Rule 83, M.R.Civ.P.

<u>Issue 2.</u> Section 93-701-3, R.C.M. 1947, provides that the following persons cannot be witnesses:

> "(3). Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the executor or administrator first introduces evidence thereof, <u>or when it appears to the court that, without the testimony of the witness, injustice will be done.</u>"(Emphasis added)

The purpose of this statute is twofold: (1) it prevents the living party, by reason of the death of his adversary, from gaining an undue advantage over the administrator, and (2) it removes the temptation for the commission of perjury. Leffek v. Luedeman, 95 Mont. 457, 463, 27 P.2d 511; Johnson v. Mommoth Lode, 136 Mont. 420, 422, 423, 348 P.2d 267; Novak v. Novak, 141 Mont. 312, 316, 377 P.2d 368.

The statute, section 93-701-3(3), allows two exceptions to the prohibition of a surviving party acting as a witness in an action for a claim or demand against an estate. The first is when the executor or administrator first introduces evidence of such a claim or demand. We are not concered here with this exception. However, the second exception provides that the surviving party may be a witness "when it appears to the court that, without the testimony of the witness, injustice will be done." We must now determine if the trial court abused its discretion under this second exception.

In Johnson v. Mommoth Lode, 136 Mont. 420, 423, 348 P.2d 267, this Court said:

"* * * before a witness, who is declared to be incompetent by this statute, will be allowed to testify to prevent an injustice, a foundation must be laid by the introduction of <u>other evidence,</u> which shows that in all probability the proponent has a meritorious cause of action." (Emphasis supplied)

What then is the "other evidence" that tends to show that plaintiff's claim here is meritorious? (1) There is the will executed by Yens Hansen in 1942, which bequeaths and devises all of his real and personal property to Kiernan. (2) There is the testimony of Katie Hansen, plaintiff's sister, who stated that she had known Joseph Kiernan all of her life and that in the fall of 1966, Kiernan and plaintiff had had dinner with her after their trip to the Deer Lodge Bank & Trust Company to change the escrow receipt. She testified:

"* * * well, I remember that Joe [Kiernan] made the remark that everything was taken care of--- that they had been to the bank, and that the papers were all in order, so that if anything happened to either of them, why it was a right of survivorship, and that if one of them would pass away, the other one would get it * * *."

(3) There are the two savings accounts in Hansen's and Kiernan's names as joint tenants with right of survivorship. (4) There are the shares of corporate stock also held in joint tenancy with right of survivorship. (5) There was a purchase of a residence in Missoula, again with joint tenancy with right of survivorship. (6) There is the escrow receipt which shows that a change to the document was made. (7) There was an undisputed lifelong association between Hansen and Kiernan without any indication whatsoever that there was ever any discord or mistrust between them. (8) There is evidence that Hansen's will was mailed to Kiernan in 1942, and held by Kiernan in his safety deposit box. (9) There is ample evidence of a successful partnership that existed between these two

men under both an oral agreement and written articles of co-partnership. Finally, after the sale of the partnership, Hansen and Kiernan continued their association by traveling together, living together and looking after each other until Kiernan's death.

Considering all of the "other evidence" as a whole, we cannot say that plaintiff failed to lay a sufficient foundation for the admission of his testimony relative to an oral agreement. entered into between himself and Kiernan to execute mutual wills. Nor will we reverse without a positive showing that the district court abused its discretion. This Court said in Novak v. Novak, 141 Mont. 312, 316, 377 P.2d 368:

> "* * * it [the court] had the advantage of observing the witnesses during their testimony and was in a better position than this court to determine whether or not injustice would result if the plaintiff were not permitted to testify."

Issue 3. Defendant alleges his post-trial motion to dismiss should have been granted due to the running of the statute of limitations. He argues that if there ever was an agreement to execute mutual wills, that such an agreement was an oral agreement entered into in 1942, and is now barred by sections 93-2601 and 93-2604, R.C.M. 1947. In support defendant cites Pincus v. Davis, 95 Mont. 375, 26 P.2d 986.

Rule 8(c), M.R.Civ.P., provides that a defense of the running of the statute of limitations is an affirmative defense and can only be raised by answer. Grogan v. Valley Trading Co., 30 Mont. 229, 76 P. 211; State ex rel. Kolbow v. District Court, 38 Mont. 415, 100 P. 207. Here, defendant failed to plead the statute of limitations in his answer and therefore waived such defense.

However, defendant argues that Pincus holds that this Court may raise the statute of limitations on its own motion as a bar to a claim against an administrator under section 91-2710,

R.C.M. 1947. Cocanougher v. Cocanougher, 141 Mont. 28, 375 P.2d 1014. Defendant is correct in this contention however both Pincus and Cocanougher apply to cases where the claim against the decedent arose many years prior to an action being filed. They involve obvious cause of action which the plaintiffs failed to do anything about. Such is not the case here.

While we may dispose of this argument by saying that defendant has waived his right to raise this defense under Rule 8(c), M.R.Civ.P., we go further and say that the statute of limitations is not a valid defense. The cause of action did not arise until there was a breach of the agreement to execute mutual wills. Plaintiff had no knowledge of this breach until after the death of Joseph Kiernan. We find issue 3 to be without merit.

Issue 4. Whether plaintiff is guilty of laches even though not plead by defendant?

Rule 8(c), M.R.Civ.P., requires that such a defense must be plead to be relied upon. Failing to so plead, we will not further consider defendant's issue 4. United States v. Eytcheson, 237 F. Supp. 371; Weir v. Silver Bow County, 113 Mont. 237, 124 P.2d 1003; State ex rel. Boorman v. State Board of Land Commrs., 109 Mont. 127, 94 P.2d 201.

Issue 5. Whether the attempt to enforce the oral agreement varied the terms of the written articles of copartnership? In asserting this issue, defendant contends the partnership remained in effect until the death of Kiernan and therefore controls the division of partnership assets as between the partners. The trial court found that the sale of all partnership property in 1966 terminated the partnership. The particular undertaking of the partnership was a "ranching and farming business". The termination of that undertaking by the sale of the ranch "lock, stock and barrel" as testified by plaintiff, brought the partnership evidenced by the written agreement to an end. Section 63-503, R.C.M. 1947.

Under the particular facts of this case, the trial court correctly concluded that the written partnership agreement was not a bar either to plaintiff's testimony or his claim.

Issue 6. Whether the trial court properly ruled on evidentiary matters? We have carefully examined the record and find no merit to this issue.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____
Hon. Charles Luedke, District
Judge, sitting for Mr. Justice
Castles.

---------------

Mr. Justice Haswell and Mr. Justice Daly dissenting:

We dissent.

Plaintiff's claim for relief in the instant case is bottomed on establishing a valid and enforceable oral agreement between plaintiff and decedent in July 1942, whereby each agreed to make a will leaving his interest in the partnership property to the other. The existence of such an oral agreement rests entirely on the uncorroborated testimony of plaintiff, the survivor, concerning a conversation he had with decedent almost thirty years previously. In our view, plaintiff is an incompetent witness to

so testify, such testimony is inadmissible in evidence under Montana's deadman statute [section 93-701-3(3), R.C.M. 1947], and plaintiff's claim fails.

This statute provides in pertinent part:

"<u>Persons who cannot be witnesses.</u>  The following persons cannot be witnesses:

"* * *

"3.  Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceedings is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the executor or administrator first introduces evidence thereof, or when it appears to the court that, without the testimony of the witness, injustice will be done. * * *"

Previous decisions of this Court indicate that the purpose of the deadman's statute is twofold:  (1) to prevent the survivor from gaining an undue advantage over the deceased's estate, and (2) to remove the temptation for the commission of perjury by the survivor giving testimony that in all probability cannot be denied by any living person.  Novak v. Novak, 141 Mont. 312, 316, 377 P.2d 368; Johnson v. Mommoth Lode, 136 Mont. 420, 348 P.2d 267; Cox v. Williamson, 124 Mont. 512, 227 P.2d 614; Leffek v. Luedeman, 95 Mont. 457, 27 P.2d 511.

In conformity with such purpose, this Court has required that before a witness, who is declared to be incompetent by this statute, will be allowed to testify to prevent an injustice, a foundation must be laid by the introduction of other evidence which indicates that in all probability the proponent has a meritorious cause of action.  Johnson v. Mommoth Lode, supra, and cases cited therein; Potlatch Oil & Refining Co. v. Ohio Oil Co., CCA 9, 199 F.2d 766, cert. den. 345 U.S. 926, 73 S.Ct. 786, 97 L ed 1357; Phelps v. Union Central Life Ins. Co., 105 Mont. 195, 71 P.2d 887.

In our view, this foundation evidence must indicate the probability of the existence of such oral agreement, and not simply establish facts equally consistent with its existence or explainable on unrelated grounds. This requirement is particularly important where, as here, the terms of the alleged oral agreement are directly contrary to the terms of the three pertinent written agreements admitted in evidence ---the partnership agreement, the original escrow agreement, and the modified escrow agreement. It has been so held by this Court in previous cases involving alleged oral agreements to make a will, Langston v. Currie, 95 Mont. 57, 26 P. 2d 160; Cox v. Williamson, supra, and particularly in cases where the oral agreement modifies or conflicts with a written contract. Bauer v. Monroe, 117 Mont. 306, 158 P.2d 485; Davison v. Casebolt, 154 Mont. 125, 461 P.2d 2.

In the instant case there is simply no evidence of the existence of an oral contract to devise and bequeath except for the testimony of plaintiff, the surviving partner. The making of a will by plaintiff no more proves the existence of an oral contract by decedent to execute a will in plaintiff's favor, than the execution of any contract or document by one person creates a reciprical obligation on the part of the obligee. Nor does any of the other evidence listed in the majority opinion prove an oral contract by decedent to devise and bequeath his property to plaintiff. The lapse of some 24 years between 1942 and decedent's death in 1968, without enforcement or mention of the alleged oral contract by plaintiff adds nothing to the required foundation.

Absent any foundation therefor, we would hold that the district court abused its discretion in admitting the testimony of plaintiff under the deadman's statute, and accordingly that plaintiff's claim must fail.

_Frank J. Haswell_

_Gene B. Daly_

Associate Judges